THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT M. CARR, Defendant-Appellant.

Second District   No. 76-175

Opinion filed September 28, 1977.

Ralph Ruebner and Peter B. Nolte, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Stephen M. Dietsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of this court:

Following a jury trial the defendant herein was found guilty of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), and sentenced to a term with the Department of Corrections of not less than 4 years nor more than 4 years and 1 day. He has appealed, raising only the issue of whether he was denied a fair and impartial trial when the trial court, over objection, permitted the jury, at its request, to have the written statements of the State's three principal witnesses in the jury room. For the reasons stated herein, we have concluded that the judgment must be reversed and the cause remanded for a new trial.

The alleged armed robbery took place in the early morning hours of June 6, 1975. At that time an automobile carrying four persons was traveling through the western section of Rockford. The occupants of the

automobile and their respective locations therein were as follows: Gerald Hammons was driving; the defendant, Robert Carr, was seated beside Hammons in the front seat; Sharon Pearson was seated behind Hammons in the back seat; and Darrell Rice, the alleged victim of the armed robbery, was seated beside Pearson and behind Carr. Hammons, Pearson and Rice all testified for the State and were the three principal witnesses against the defendant. Defendant testified on his own behalf that no robbery took place.

The testimony of the State's three witnesses differs in certain particulars from each other and we do not deem it necessary to this opinion to recite the testimony of each witness at length. Earlier in the evening all four occupants of the car had been at the Blue Garter tavern in Rockford. About midnight or shortly thereafter a conversation involving the defendant, Pearson and Rice took place. Eventually there was a "deal" struck whereby at least two of the three participants in the conversation believed that Sharon Pearson had agreed to accompany Rice to a motel for $20. Arrangements were made for Gerald Hammons to drive Pearson and Rice to a motel on the west side of Rockford in return for gas money and defendant accompanied the other three persons on this ride. Somewhere along the way before reaching the motel there was an argument involving, at various times, defendant, Pearson and Rice. The result of the argument was that the "deal" would be called off. Hammons insisted that he was still entitled to gas money and Rice agreed to pay him. After Rice removed his wallet to pay Hammons, the alleged armed robbery took place. Defendant allegedly turned around from the front seat with a shiny object in his hand and demanded all of Rice's money. Both Pearson and Rice testified to seeing the shiny object which they concluded was a knife in defendant's hand at the time the demand was made. Hammons testified only that he heard defendant say something about giving him the money. After defendant allegedly took all of Rice's money, Rice jumped out of the car and the other three occupants of the car drove back to the Blue Garter tavern, where they were apprehended by police. In the meantime Rice had reported the alleged incident to police, first as a kidnapping and later as an armed robbery.

Rice, who admitted to being intoxicated at the time of the alleged incident but claimed to have a perfectly clear memory of what happened, had supposedly had slightly over $100 in his possession on June 5. Between noon and midnight he had spent money on such things as drinks, food and a movie. Rice testified that the police estimated that he still had in his possession at the time of the robbery approximately $55. The police recovered a $20 bill from Sharon Pearson. The testimony is conflicting as to whether she received this from defendant after the robbery or from Rice. When searching defendant the police recovered a small pocket

knife, which was the weapon allegedly used in the robbery. In addition, the defendant had on his person $10.10, which he claimed to have had when he went to the Blue Garter with a friend. No testimony was introduced as to whether Hammons or the car were searched for the remainder of the $55 which defendant had allegedly taken from Rice. No one at trial made any attempt to account for what had happened to the $55.

During direct examination, Hammons testified that he had made a statement to the police after being taken into custody that he had not been charged with any offense as a result of the alleged crime. On cross-examination he identified the statement which he had made to police and admitted that it contained nothing whatsoever about having heard defendant demand money from Rice.

Pearson also testified on direct examination that she made a statement to police following the incident and had given them the $20 bill. The cross-examination of Pearson was rather extensive and, during that time she repeated the same version of the events which she had testified to on direct examination. She also identified the statement which she had made to police. Our examination of the record herein, however, reveals that the only questions asked by defense counsel with regard to the statement had to do with the time it was given. On redirect examination the prosecution made reference to one portion of the statement having to do with her receipt of the $20 and the circumstances under which she turned that money over to the police while she was making her statement.

During direct examination Rice testified to the fact that he had reported two conflicting stories to police, including the same story to which he had just finished testifying. The cross-examination of this witness was also rather extensive. He was impeached by referring to certain statements he had made at a preliminary hearing which varied from his testimony at trial. This impeachment is not at issue in this appeal. Rice also identified the statement which he had given to police after the incident in question. As part of his direct testimony Rice had stated that defendant told him at least twice that if he (Rice) moved defendant would cut him. He admitted that his statement to the police contained no report of this threat. He also admitted that there was a certain amount of variation between his testimony at trial and the statement with regard to the details of the alleged offense, to-wit: whether defendant took the wallet from him or merely took the money out of the wallet.

During the cross-examination of each of these witnesses the defense had his or her statement marked as an exhibit for identification. There was, however, no attempt made to offer the statements into evidence at that time and they were never read to the jury. The only time they may have been offered or received into evidence was after the defense had

finished presenting its testimony. The following exchange between defense counsel and the court then took place in chambers:

"MR PETERSON: Judge, I would offer for the purpose of identification at this time what I have had marked as Exhibits #1 thru #4. Defendant's Exhibit #5, I would ask that go to the jury, which is the property receipt.

THE COURT: The exhibits will be admitted, and #5 will go to the jury."

The judge's comments made at the post-trial motion indicate that the jury in this case retired at approximately noon. According to the record herein about 2:30 the jury rang for the bailiff and made two requests. First they requested the statements of Hammons, Rice and Pearson, and secondly, they requested that the court reporter read back Pearson's testimony. Apparently there was some off-the-record discussion between the court and both counsel concerning the propriety of giving the three statements to the jury. The court's statements in the record indicate that during that discussion both parties had objected to submitting these statements to the jury. The court stated to counsel, out of the presence of the jury, his reason for giving the statements to the jury as follows:

"THE COURT: I think they should be—my conclusion is this, theoretically they are introduced only to show impeachment of the witnesses; but I think they are entitled to know completely wherein there was impeachment, and therefore, over the objections of both the State and the Defense I will let them go to the jury."

Shortly thereafter the jurors were called back in and the judge made the following statement to them:

"THE COURT: Ladies and gentlemen, you have asked for certain statements that were introduced for impeachment. I have decided that I would let the statements of the three, other than the Defendant, go to the jury. I don't believe I can let the statement of the Defendant—well, I don't know if there was a statement.

I cannot ask that the Reporter read the testimony of a witness, Sharon Pearson. I think the state of the law is such that this would indicate if I would allow her testimony to be repeated and therefore re-emphasized. I think this isn't fair to either the Defendant or to the State, therefore your request for the readback of the testimony of Sharon Pearson then would have to be denied.

I would only ask that you discuss the case among yourselves, and between you, you can recall the testimony of each witness. I ask that you go back and deliberate some more. Thank you."

The jury thereafter retired with the three statements and did not return their verdict until 10:40 p.m. of the same day.

■■ The first question which presents itself in determining whether or

not defendant was denied a fair trial due to the fact that the jury was permitted to take the statements into the jury room during deliberations is whether they were even admitted into evidence. Defendant's brief states flatly that they were not admitted. The State makes no comment whatsoever about whether the statements were admitted but simply contends that the action of the trial court in allowing the statements to go to the jury does not amount to reversible error. We have set forth above the only point in the record at which we deem these exhibits might have been admitted into evidence. As we read defense counsel's offer of the statements they were reoffered "for the purpose of identification." The court's simple statement that "the exhibits will be admitted" does not reflect whether the statements were in fact admitted into evidence without limitation, admitted for a limited purpose, or merely "admitted" for purposes of identification and inclusion in the record. Other statements appearing in the record indicate that the court, at least, believed that they were admitted for the limited purpose of impeachment. We have grave doubts as to whether or not these statements were admitted into evidence for any purpose. We therefore note that it is error to permit a jury to take with them into the jury room, during deliberations, matters of any sort which were not admitted into evidence. (*Gertz v. Bass* (1965), 59 Ill. App. 2d 180, 208 N.E.2d 113.) As *Gertz* indicates, however, the question would still remain whether or not the error was sufficiently prejudicial to defendant to require a reversal. For the reasons hereinafter set forth we believe these statements were clearly prejudicial to defendant and therefore it constituted reversible error to give them to the jury regardless of whether they were admitted into evidence. We therefore decline to resolve the issue of whether or not they were in fact admitted into evidence. At the next trial of this cause we are sure that counsel and the court will endeavor to make the record clear in this regard.

We turn now to the matter of the propriety of giving these "exhibits" to the jury. Initially we note that the trial court has considerable discretion in deciding what exhibits should be given to the jury and this decision will not be reversed on appeal unless there was an abuse of such discretion prejudicial to the defendant. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818; *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Manley* (1971), 133 Ill. App. 2d 882, 272 N.E.2d 411.) The comments made by the trial judge at the hearing on defendant's post-trial motion indicate quite clearly that he believed his action was in the interest of assuring fairness to all involved. His comments also indicate that he believed the defense attempts to impeach the witnesses with their prior statements engendered confusion and that hiding the statements after they had been referred to would cloud the trial. As we have indicated

earlier, it was the State in all instances which first brought forth the fact that the witnesses had given statements to the police. The defense made no attempt to impeach Sharon Pearson with her prior statement. There was only one instance in which the defense attempted to impeach Hammons and only two involving the prior statement of Rice. As we read the record we find no reason to believe that the jury was confused. We further believe that merely giving the jury the statements would do nothing to resolve the confusion if there were in fact any doubt as to which part of their stories the various witnesses had changed. That matter could only be resolved by rereading the testimony and impeachment of the various witnesses on the points in controversy. Apparently even the jury recognized this, at least with regard to Pearson, because they specifically requested that her testimony be reread to them. Thus, while it is clear that the trial court herein acted with the very best of intentions in giving these statements to the jury, we find that these good intentions were insufficient.

The trial judge's comments appearing in the record herein also indicate that he was aware that the matters which he gave to the jury contained both prior consistent statements and prior inconsistent statements. Pearson's statement falls entirely into the category of a prior consistent for the most part, also prior consistent statements. The State has argued in this regard that because the statements are basically consistent with the three witnesses' testimony at trial they were merely cumulative and therefore harmless. We have examined the cases cited by the State in support of their argument but find none of them applicable to the factual situation confronting us. Most of the cases cited by the State involve cumulative testimony in that after one witness had testified concerning a matter a second witness was allowed to give similar testimony. We find that to be clearly distinguishable from the situation herein in which the witnesses were all properly allowed to give their testimony and then the court, in effect, gave the jury the testimony of the State's witnesses over again in written form. In this regard it is interesting to note that at the time the trial court advised the jury he would not allow Sharon Pearson's testimony to be reread he indicated that the reason for his ruling was that it would unduly emphasize that particular witness' testimony. This is an important and valid consideration, especially in a cause such as this one, the outcome of which is basically dependent upon the credibility of the witnesses. Giving the statements to the jury, however, had exactly the same effect of emphasizing not only Sharon Pearson's testimony but also the testimony of Hammons and Rice. Not only did the jurors thus have the opportunity of "hearing" the State's witnesses twice, they had the statements reduced to tangible form to take with them to the jury room to consult at their leisure. We have found no cases directly dealing with this

type of situation but note that there is at least some analogy between the statements given to the jury here and those read to the jury in *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113. In *Buckley* the State offered into evidence the written statement of the complaining witness to the police and the court allowed it to be read to the jury. We concluded in *Buckley* that this procedure improperly allowed the testimony of the witness to be bolstered up or supported by the showing that he had made similar statements at other times before his testimony in court. The procedure followed herein likewise allowed the testimony of the State's witnesses to be improperly bolstered and re-emphasized.

■■ To the extent that the statements of Hammons and Rice may be regarded as prior inconsistent statements, it has also been held that it is improper to allow such documents to be taken into the jury room. (*Esderts v. Chicago, Rock Island & Pacific R.R. Co.* (1966), 76 Ill. App. 2d 210, 222 N.E.2d 117; *Nelson v. Northwestern Elevated R.R. Co.* (1912), 170 Ill. App. 119.) Further, as we have pointed out earlier, neither statement would ever be admissible in its entirety under this theory because neither is entirely contradictory of the witnesses' testimony at trial. Two of the three instances of defense impeachment involved an admission that the earlier statement omitted any mention at all of the statement later made at trial. The third instance involved only one sentence in Rice's statement, and thus only it and not the whole statement may have constituted a prior inconsistent statement.

■■ The State has also argued in its brief that the jury was properly instructed twice that the statements in question were introduced only for purposes of impeachment as opposed to substantive evidence. Our examination of the record references cited in support of this contention, however, does not support the State's conclusion. The majority of the references to "impeachment" appear in the closing arguments of counsel. The arguments also make numerous references to the contents of the statements as though they were substantive evidence of what took place in the car. At the time the court gave the statements to the jury he made only the statement, set forth earlier in this opinion, that they had asked for certain statements which were introduced for impeachment and that he had decided to give the statements to them. There was no further instruction with regard to the proper use of the impeaching portions of these statements, or even as to which portions were impeaching. Although the State has pointed out that the court gave IPI Criminal No. 3.11, as to impeachment by prior inconsistent statements, we note that the instruction was apparently given some hours earlier along with the rest of the instructions and was not repeated at the time the statements themselves were given to the jury. Thus, the jury herein could quite easily have concluded that they could use these statements for any purposes

they wished, including as substantive evidence of the matters stated therein. In this state the law is clear that prior inconsistent statements of witnesses may not be considered as substantive evidence by the jury and that the jury must be adequately instructed as to the limited purposes for which such evidence may be used. (*People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804; *People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77; *People v. Coagan* (1975), 28 Ill. App. 3d 634, 328 N.E.2d 917.) Under the circumstances of this case we are not at all sure the jury was adequately instructed with regard to the proper use of the portions of the Hammons and Rice statements which differed in part from their testimony at trial.

■■ Because this case must be remanded for a new trial we deem it wise to comment upon one other matter which was not raised by the parties. As we noted earlier, the jury requested that Sharon Pearson's testimony be reread to them. We set forth the trial court's statement to the jury wherein he denied this request. The record herein does not indicate that there was any discussion of the matter out of the presence of the jury. Indeed, the only reference to the request appearing in the record is when the bailiff reminded the court after he had decided to give the statements to the jury that the jury had also requested that Pearson's testimony be reread. The judge inquired of the bailiff which portion of Pearson's testimony, to which the bailiff replied that the jury would like to hear all of it. Thereafter the court made its statement to the jury. Apparently there was no intervening discussion with counsel concerning this matter. It is now clearly established in Illinois that the trial court has discretion to allow or refuse a jury's request for the review of testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) A failure to exercise this discretion in the erroneous belief that no such discretion exists is error. (*People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) From the trial judge's statements herein it is not entirely clear to us whether he had in fact exercised his discretion in this regard and were merely explaining the reason for his denial to the jury or whether in fact he believed that he had no discretion on this matter. If the question should arise during the new trial of this cause we trust that the trial court will exercise its discretion and that the record will clearly so reflect.

For the reasons above stated, this cause is reversed and remanded for a new trial.

Reversed and remanded.

BOYLE and WOODWARD, JJ., concur.