THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY LEE, Defendant-Appellant.

First District (2nd Division)   No. 1—89—2307

Opinion filed March 16, 1993.—Rehearing denied May 6, 1993.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michael Latz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Rodney Lee, was charged with first-degree murder for the death of the victim, Frederick Brown. After a jury trial, defendant was convicted of second-degree murder and sentenced to six years' imprisonment. Defendant appeals from his conviction and sentence.

On appeal, defendant argues that (1) the State did not prove him guilty beyond a reasonable doubt of second-degree murder; (2) the trial court erred in allowing Vernon Carter's signed statement to go to the jury, while refusing to allow the jury to examine a transcript of his trial testimony; and (3) the trial court, in sentencing defendant, improperly considered in aggravation the fact that defendant's acts caused serious harm when the infliction of harm is inherent in the offense.

We affirm defendant's conviction because of the reasons stated below.

The victim occasionally stayed with his mother, Ernestine Smith. On the morning of September 18, 1988, between 1:30 a.m. and 2 a.m., Smith and her daughter, Melba Brown, returned to Smith's second-floor apartment at 7013 South Sangamon. They discovered that the front door was locked. When the victim let them in, he told them that he had locked the door because someone was trying to kill him. Smith noticed that the victim had knives in his hand. She took the knives

from the victim and placed them in her bedroom. Melba Brown called the police and stated that the victim said that someone was trying to kill him. She asked for help, but the police refused to come to the house.

Smith was on her way to the bathroom when she heard a knock at the door. The victim said "do not open the door," but Smith asked who it was. When Carter answered, "Vernon and Lewis," Smith told the victim to let them in. Smith proceeded to the bathroom. Melba Brown called the police and told them that there was going to be a shooting. While talking to the police on the telephone, Brown heard gunshots. Melba Brown dropped the phone and hid in a closet. Melba Brown stayed in the closet for a couple of minutes. Melba Brown went into the kitchen and observed the victim lying on the floor bleeding. The victim died later that day from the gunshot wounds.

At trial, Dr. Kirshner, a medical examiner, testified that the victim was shot three times, once in the back, once on the forearm and once in the thigh. The victim had a blood-alcohol level of .185 at the time of his death. The word "killer" was tattooed on the victim's chest.

James Brown, one of the victim's brothers, testified that the victim stabbed him in a fight five days before the shooting. He stated that he was outside the building at 7013 South Sangamon with Carter, Reggie Donaldson and defendant on the night that the victim was killed. Allegedly they heard an argument coming from the house and James Brown and Donaldson tried to enter through the front door. This door was locked. Carter and defendant walked to the back door. James Brown heard three shots. James Brown stated that defendant ran down the stairs past him as he went up the stairs. When James Brown got upstairs, he saw the victim lying on his back on the kitchen floor. Carter said, "He didn't have to shoot him, he didn't have to shoot him."

The State introduced into evidence a tape recording of Melba Brown's second call to the police. James Brown identified defendant's and Carter's voices on the tape. He identified defendant as saying, "come on, man, come on." Carter said, "Fuck you, man, you did not have to shoot him."

The State introduced a transcript of the statement Carter made to the police on the night of the shooting. This statement was admitted pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1) and was, thus, substantive evidence. In the statement Carter said that he heard arguing going on in the victim's apartment, so he and defendant went

up to the third floor to check out what was happening. Carter knocked on the door, and the victim asked who it was. Carter identified himself and the victim opened the door. The victim grabbed Carter and pushed him over the bannister. The victim then grabbed defendant by the neck and they fought. Carter said that the victim was not armed and had nothing in his hand. The victim and defendant ended up in the kitchen, where the victim stumbled, and defendant pulled out a gun and shot him. Defendant ran with the gun.

At trial, Carter testified that defendant did not accompany him, and he did not think that anyone followed him up the stairs. He did not see who fired the gun, and he did not tell the police that defendant shot the victim. After hearing a shot, Carter pulled himself back up over the bannister. He heard someone run down the stairs, but he did not see who it was. When Carter went into the kitchen and saw the victim lying on the floor, he screamed, "why the fuck did you shoot him, why the fuck did you shoot him[?]" He testified that he was talking to defendant, but that defendant was gone.

The jury deliberated for five hours without reaching a verdict. At that time, defense counsel moved for a mistrial. The court denied the motion. The jury was sequestered for the evening and deliberations resumed the next day. The court granted the jury's request to see Carter's signed statement. The jury later requested to see Carter's statement again and a transcript of his trial testimony. Defense counsel objected to this and again moved for mistrial. The court denied the motion for mistrial and the jury's request for Carter's statement and trial testimony.

Defendant initially argues that he was not proved guilty beyond a reasonable doubt because there is no credible evidence that he shot the victim. Defendant argues that Carter's trial testimony was more believable than his out-of-court statement. In his written statement, Carter said that he saw defendant shoot the victim, but at trial he testified that he did not see who shot the victim.

The testimony of a single eyewitness is sufficient to sustain a conviction if the witness is credible and his testimony is positive. (*People v. Patterson* (1972), 52 Ill. 2d 421, 288 N.E.2d 403.) The assessment of the credibility of a witness is for the jury (*People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136), and a reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313). In the instant case, the jury heard the contents of Carter's written statement and listened to his testimony at trial and found that the statement was more credible.

■■ Substantial evidence corroborated Carter's statement and supports defendant's conviction. (*Cf. People v. Wise* (1990), 205 Ill. App. 3d 1097, 563 N.E.2d 1057.) The State's witnesses identified defendant's voice on the 911 tape, James Brown testified that after he heard shots, he saw defendant running down the back stairway of the apartment building, and Carter testified that he shouted out that defendant did not have to shoot the victim. Under the facts of this case, we cannot say that the evidence is so improbable as to raise a reasonable doubt of defendant's guilt.

■■ Defendant further contends that he was not proved guilty beyond a reasonable doubt of second-degree murder because the State failed to prove that he did not act in self-defense. The State contends that defendant waives this argument because he failed to specifically raise it in his written motion for a new trial. Generally, failure to raise an issue at trial and in a written motion for a new trial results in a waiver of that issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) When a party has failed to comply with the statutory requirement for filing a post-trial motion, our supreme court has narrowed the limits of review to constitutional issues, arguments on the sufficiency of the evidence and plain error. Defendant's argument is reviewable in that it concerns the sufficiency of the evidence.

■■ The relevant question on review, when faced with a challenge to the sufficiency of the proof, "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *Manion*, 67 Ill. 2d at 578.

"The use of force in the defense of a person is legally justified where each of the following elements is present:
'(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable.' " (*People v. Kyles* (1980), 91 Ill. App. 3d 1019,

1021, 415 N.E.2d 499, quoting *People v. Williams* (1965), 56 Ill. App. 2d 159, 165, 205 N.E.2d 749.)

The use of deadly force is limited to those situations where (a) the threatened force will cause death or great bodily harm, or (b) the force threatened is a forcible felony. (*Williams*, 56 Ill. App. 2d at 166.) The State has the burden of proving beyond a reasonable doubt that defendant's act was not in self-defense. The State has carried its burden of proof if the trier of fact determines that the State has negated any of the above elements beyond a reasonable doubt. *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 675, 450 N.E.2d 1299.

■ The State presented evidence that defendant went to the victim's apartment and found the victim unarmed. The victim struggled with defendant, and defendant pulled out a gun and shot the victim three times, once in the back. Since defendant intruded upon the victim, who feared for his life, a reasonable jury could have found that defendant was the aggressor. The jury could also have found that the unarmed victim did not threaten to use force which would cause great bodily harm, or that defendant did not reasonably continue to fear death or great bodily harm after the victim was struck by the first bullet. The use of deadly force is not justified where the victim, even though initially the aggressor, has been disarmed or disabled. (*People v. Limas* (1977), 45 Ill. App. 3d 643, 652, 359 N.E.2d 1194.) We cannot say that the evidence proving that defendant's acts were not in self-defense is so improbable as to leave reasonable doubt of defendant's guilt, when the evidence is viewed in the light most favorable to the prosecution.

■ Defendant's next contention is that the trial court abused its discretion in allowing Carter's written statement to go back to the jury and not allowing the jury to see a transcript of Carter's trial testimony. The State maintains that defendant waives this issue on appeal because (1) he failed to object when the trial court refused to send a transcript of Carter's testimony to the jury; and (2) he failed to specifically raise this same issue in a post-trial motion. As has been previously discussed, failure to raise an issue at trial and in a written motion for a new trial results in a waiver of that issue on appeal. *Enoch*, 122 Ill. 2d at 186.

At trial, defendant did not object to the trial court's failure to send Carter's transcript back to the jury, nor did he raise the issue in his post-trial motion. Therefore, defendant's argument on the trial court's failure to send the transcript back is waived. Defendant did not waive the argument in the written statement because he did object at trial, and he raised the issue in his post-trial motion.

Defendant contends that sending Carter's written statement to the jury overemphasized the statement and encouraged the jury to reject his self-defense argument. Whether evidentiary items should be taken to the jury room rests with the discretion of the trial court. A trial court's decision will not be reversed unless there was an abuse of discretion to the prejudice of the defendant. *People v. Williams* (1983), 97 Ill. 2d 252, 292, 454 N.E.2d 220, citing *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33.

Defendant cites to *People v. Carr* (1977), 53 Ill. App. 3d 492, 368 N.E.2d 128, where it was found that the trial court committed reversible error by allowing certain statements to go back to the jury. The statements objected to in *Carr* were prior inconsistent statements which had not been admitted into evidence and were sent back to the jury without instructions that the statements were not to be used as substantive evidence. The instant case is distinguishable because the statement herein was properly admitted as substantive evidence. In view of the contradictions between Carter's statement and his trial testimony, it is understandable that a jury would find it valuable to review the same.

The jury was instructed to weigh all of the evidence. The conclusion advanced by defendant that the contents of the statement were overemphasized is unsupported by fact or reason. We cannot conclude under the facts and circumstance of this case that defendant had a right to have the jury's request to review Carter's statement denied. Clearly, the trial court did not abuse its discretion.

■ Defendant's final contention is that in sentencing him, the trial court improperly considered in aggravation the fact that his act caused serious harm. He argues that it was error because for second-degree murder the infliction of harm is inherent in the crime. Defendant relies on *People v. Salvidar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, and *People v. Smith* (1990), 195 Ill. App. 3d 878, 552 N.E.2d 1061, in support of his argument. In *Salvidar*, the defendant therein used a similar argument, but the court held that the degree of harm caused to the victim may be considered as an aggravating factor in determining the exact length of a sentence, even in cases where serious bodily harm is implicit in the offense for which a defendant is convicted. (*Salvidar*, 113 Ill. 2d at 269.) However, the court therein did find that the trial court focused on the death of the victim in sentencing that defendant. In *Smith*, the defendant's sentence was vacated and remanded for resentencing. The court determined that the trial

court considered the victim's death to be a major aggravating factor and was not concerned with the manner in which the death occurred.

Contrary to *Salvidar* and *Smith*, the trial court in the instant case did not focus on the victim's death in sentencing defendant. The trial court considered the following factors: (1) that defendant's act caused serious harm; (2) that defendant initiated contact by going to the victim's home; (3) that defendant had a gun when he went to the victim's home; (4) that defendant shot the victim three times; (5) that defendant did not have a criminal history; and (6) the presentence investigation report. Defendant's sentence was properly imposed. (See *Salvidar*, 113 Ill. 2d at 268-69.) The sentence was within the statutory range for second-degree murder. On this record, we cannot say that the trial court improperly augmented the sentence based on the fact that the victim died.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.