THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARY LONG, Defendant-Appellant.

First District (1st Division)   No. 1—99—1974

Opinion filed September 29, 2000.

Kwame Raoul, of Jean-Baptiste & Raoul, of Evanston, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Katherine Blakey Cox, and James D. Ridgeway, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COHEN delivered the opinion of the court:

Defendant was charged with driving under the influence of alcohol, resisting a peace officer, and two counts of battery to a peace officer. Defendant made a pretrial motion to quash her arrest which the trial court denied. The jury convicted defendant of resisting a peace officer and acquitted her of one count of battery to a peace officer. However, as the jury could not reach agreement on the other two charges, the trial court declared a mistrial as to those counts. After retrial, the new jury convicted defendant of driving under the influence of alcohol and acquitted her of the remaining count of battery to a peace officer.

The trial court then sentenced defendant to 60 days in the Cook County jail for resisting a peace officer and to a one-year conditional discharge and a $500 fine for driving under the influence. Defendant now appeals.

Initially, defendant contends that there was insufficient evidence to convict her of either resisting a peace officer or driving under the influence. Defendant also argues that her conviction for resisting a peace officer must be reversed because: (1) the trial court sent a police report to the jury that had not been admitted into evidence; (2) during *voir dire* the trial court erroneously denied a defense motion to strike one prospective juror for cause and improperly granted a racially motivated peremptory strike by the State; (3) in questioning a defense witness before the jury, the trial court implied that it might not be proper for that witness to testify; and (4) the trial court improperly allowed the State to question defendant about her pretrial silence.

## BACKGROUND

Defendant Mary Long was charged with driving under the influ-

ence of alcohol, resisting a peace officer, and two counts of battery to a peace officer.

## Hearing on the Motion to Quash

At the hearing on a motion to quash arrest, Forest Park police officer Nicholas Petrovic testified that on the night of December 14, 1998, he was on patrol in a marked police car. Petrovic, in training at the time, was accompanied by field training officer Steven Weiler. At around 2:10 a.m., a Jeep Cherokee with only one working headlight passed the officers. They started to follow the Jeep, which was driven by defendant. Petrovic and Weiler saw defendant depart at a high rate of speed from one intersection, fail to stop at a stop sign at another intersection, stop in the middle of another intersection and squeal her tires as she went around a corner. Both officers thought that defendant was driving above the speed limit but did not issue her a speeding citation. They did turn on the squad car's emergency lights and sound the air horn. After a few blocks, defendant pulled into an alley and stopped next to the building where she lived.

Petrovic approached the Jeep and asked defendant for her license and proof of insurance. According to Petrovic, defendant responded "Oh, what the fuck. Is that all you guys have to do tonight?" Petrovic observed that defendant's speech was slurred, she had bloodshot eyes and she smelled of alcohol. He asked defendant if she was intoxicated. She did not respond, so he asked again. Defendant said "Fuck you" and drove slowly to her garage entrance about 100 feet away. Officer Weiler followed defendant on foot while Officer Petrovic followed in the police cruiser.

Officer Weiler testified that, as he came up to the window, defendant was fumbling through the glove compartment. She had turned up the volume of her radio so it was extremely loud and did not turn it down until Weiler had asked her three times. Weiler testified that he could smell alcohol on her breath. He asked if she had been drinking. Again defendant said "Fuck you." Weiler asked defendant to step out of the Jeep so he could perform field sobriety tests. Defendant said "No fucking way" and activated her automatic garage door opener. Defendant then tried to put the Jeep in gear, without success. She then leaned over toward the floor. Officer Weiler reached in and took the keys out of the ignition. Defendant, not realizing that Weiler had done this, continued attempting to put the Jeep in gear. Weiler told her she was under arrest for driving under the influence of alcohol. Weiler opened the door and, when defendant again refused to exit, tried to handcuff her. Defendant struggled, scratched Weiler, and then fell out of the Jeep.

Officer Debra Taylor then arrived on the scene and took defendant to the station. At the station, defendant was placed in a holding cell. Weiler testified that, while at the station, defendant refused to answer booking questions and continued to yell profanities. At one point he noticed that defendant's blouse was ripped open. It was not ripped when they had put her in the holding cell. Weiler then called Taylor over to deal with defendant. When Taylor attempted to remove defendant's belt as mandated by police procedure, defendant grabbed Taylor's hair. Weiler came over to assist Taylor and defendant kicked him in the shin. Weiler and Taylor had to carry defendant in order to get her back into the holding cell. Taylor testified at trial, and her testimony concerning events at the station was substantially the same as Weiler's testimony.

Weiler further testified that Millaun Brown, defendant's boyfriend and a Chicago police officer, called the station. The officers offered defendant the opportunity to talk with Brown on the telephone, but she simply yelled something unintelligible and threw the receiver. Later that morning Brown came to the station. Brown was not allowed to see defendant at that time, however. Brown posted bond for defendant around noon. During the hearing on the motion to quash, defendant took the stand but only testified that both her headlights had been working on the night of the incident.

The judge denied the motion to quash arrest.

## The First Trial

At *voir dire*, the prosecution used a peremptory strike to remove an African-American woman. The defense objected, charging that this was a racially motivated strike in violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). As a race-neutral reason for its strike, the prosecution noted that the woman and her family had been the victims of crimes. While there were other crime victims on the panel, this woman was alone in expressing dissatisfaction with the way the police had handled her complaints. The judge accepted this explanation as nonpretextual.

Also during *voir dire*, the judge denied a defense motion to strike a police officer from the panel for cause. The motion was predicated on the fact that the officer was to be a witness in an unrelated trial where the charge was driving under the influence of alcohol. The court found that the officer could be impartial.

At trial, defendant testified that she had been at the house of a friend on the evening of December 14, 1998. She did not drink anything there or on her way home. Defendant claimed that she did not violate any traffic laws on the way home and that both her

headlights were working. As she was opening her garage door, Officer Weiler knocked on her window. He asked her if the Jeep belonged to her and if she lived at that building. Weiler did not ask her to submit to field sobriety tests. He asked her to show him her license and proof of insurance. As she was looking for them in her purse, Weiler reached in and took the keys from the ignition. She said "What the fuck are you doing?" Weiler then touched her breast, so she grabbed his hand and tried to remove it from her body. Weiler opened the door and pulled her out of the Jeep, telling Petrovic "This is how you treat a nigger." Weiler started to handcuff defendant and then knocked her unconscious with his flashlight. Defendant testified that she regained consciousness at the station. There, Weiler continued to push and grab her. She said that she did not learn what the charges against her were until Brown had already bailed her out the next day. When she went home she discovered that one of her headlights had been ripped out. She reported the missing headlight to the police.

On cross-examination, the State elicited that defendant did not report her alleged maltreatment at the hands of the police to a government authority or to the media. Nor did defendant speak of police maltreatment when she took the stand at the hearing on the motion to quash.

Millaun Brown testified that he went to the station on the night of defendant's arrest but that Weiler prevented him from seeing defendant. He said that when he picked defendant up the next day she did not appear to have been drinking. When defense counsel asked Brown if defendant drank, the judge would not allow Brown to answer the question.

While deliberating, the jurors requested a copy of Weiler's arrest report. The defense had mentioned this report during trial but it had not been admitted into evidence. The judge provided it to the jury over defendant's objection.

The jury convicted defendant of resisting a peace officer and acquitted her of battery to Officer Weiler. Because the jury could not reach agreement on the other charges, the judge declared a mistrial as to those counts. Defendant was then retried on the unresolved counts.

## The Second Trial

The second trial proceeded before a different judge, Francis Golniewicz. The State called Weiler, Petrovic and Long, who gave substantially the same testimony they had given previously. The defense called an additional witness, Cecelia McCoach. McCoach testified that on December 13, 1998, defendant stayed at her house from around 8 p.m. until 1 a.m. According to McCoach, defendant was not

drunk when she arrived, did not have anything to drink there and when she left both her headlights were working.

The second jury convicted defendant of driving under the influence of alcohol and acquitted her of battery to Officer Taylor. Defendant was sentenced to 60 days in the Cook County jail for resisting arrest and to a year of conditional discharge and a $500 fine for driving under the influence.

Defendant appeals both convictions on the grounds of insufficient evidence. She also appeals the conviction for resisting arrest on the grounds that: (1) the trial court improperly sent the arrest report to the jury; (2) during *voir dire* the trial court erroneously denied defendant's motion to strike one prospective juror for cause and improperly granted a racially motivated peremptory strike by the State; (3) in the presence of the jury the court asked Brown a question that implied that it might not be proper for him to testify; and (4) the trial court allowed the State to question defendant about her pretrial silence.

## ANALYSIS

### I

■ Defendant argues that there was insufficient evidence to support her convictions for driving under the influence and resisting a peace officer. In reviewing for sufficiency of the evidence, we determine whether, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350, 353-54 (1999). A conviction should only be set aside if the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989).

■ The essential elements of driving under the influence are: (1) that the defendant is driving a vehicle; and (2) the defendant is intoxicated while driving. *People v. Rhoden*, 253 Ill. App. 3d 805, 809, 625 N.E.2d 940, 943 (1993). It is undisputed that defendant was driving. As to intoxication, the arresting officers attested to defendant's erratic driving and belligerent manner. They testified that she smelled of alcohol, her eyes were bloodshot and her speech was slurred. She was unable to put her Jeep in gear, and she fell out of the Jeep. A reasonable jury could infer from this testimony that defendant was intoxicated. *People v. Wiebler*, 266 Ill. App. 3d 336, 339-40, 640 N.E.2d 24, 27 (1994). Viewing the evidence in the light most favorable to the prosecution, there was clearly a sufficient basis for the jury at the retrial to convict.

■ In order to show that a defendant is guilty of resisting a peace officer, the prosecution must demonstrate that the defendant knowingly resisted the peace officer or obstructed the officer in the performance of any authorized act within his or her official capacity. 720 ILCS 5/31—1(a) (West 1998). Defendant admits she knew Weiler to be a peace officer but denies that she engaged in conduct that would constitute "resisting" under the statute.

In *People v. Flannigan,* 131 Ill. App. 2d 1059, 267 N.E.2d 739 (1971), the defendant was arrested for reckless driving. He did not immediately exit his car when asked to by the arresting officer. He did not give his keys to the officer when asked, saying that he wanted to give them to his girlfriend. He jerked his arm away from the officer when the officer tried to take him to the squad car, saying that he would go by himself. However, he did not actually refuse to go to the car or try to escape. The appellate court reversed the defendant's conviction for resisting a peace officer. It found that, while the defendant had been uncooperative, his conduct did not rise to the level of resisting. *Flannigan,* 131 Ill. App. 2d at 1063, 267 N.E.2d at 742.

■ Merely arguing with a police officer—even using abusive language—does not constitute resisting a peace officer. *Flannigan,* 131 Ill. App. 2d at 1063, 267 N.E.2d at 742. In this case, however, defendant did more. As the law mandates, looking at the evidence in the light most favorable to the prosecution, we accept the officers' account of defendant's conduct. *Lamborn,* 185 Ill. 2d at 590, 708 N.E.2d at 353-54. She scratched Officer Weiler and struggled when he tried to handcuff her. She physically tried to force Officer Taylor to stop when she tried to remove defendant's belt. When Weiler tried to help Taylor, defendant kicked Weiler in the shin. When the officers tried to get defendant to go back into the holding cell, she went limp and had to be carried. It was reasonable for the jury to conclude that defendant was not merely displaying hostility towards the officers, but also was trying to physically thwart, or at least impede, them in the performance of their duties. See *People v. Crawford,* 152 Ill. App. 3d 992, 505 N.E.2d 394 (1987). Accordingly, we find that there was sufficient evidence to support both convictions. As defendant has not alleged any other error in the conduct of the second trial, we affirm defendant's conviction for driving under the influence of alcohol and the remainder of our analysis will pertain solely to the conduct of the first trial and the conviction for resisting a peace officer.

## II

■ Defendant next contends that her conviction for resisting a peace officer must be reversed because the judge sent a document not

in evidence to the jury room. While deliberating, the jurors asked to see two pages of the arrest report that Weiler prepared. The judge sent these pages to the jury over defendant's objection. Later, the jury requested the rest of the report and again the judge acceded over the objection of defendant. It is error for a judge to allow the jury during deliberations to view matters of any sort that were not admitted into evidence. *People v. Carr*, 53 Ill. App. 3d 492, 497, 368 N.E.2d 128, 131 (1977). Moreover, police reports are generally inadmissible hearsay. *People v. Smith*, 141 Ill. 2d 40, 72, 565 N.E.2d 900, 914 (1990).

The State itself concedes that the judge erred in sending the arrest report to the jury. Nevertheless, the State argues, the error does not require reversal because it did not prejudice defendant. See *People v. Hayes*, 70 Ill. App. 3d 811, 828, 388 N.E.2d 818, 830 (1979). Where an error of this type could not have reasonably affected the outcome of the trial, the verdict will be affirmed. *People v. Burdine*, 57 Ill. App. 3d 677, 686, 373 N.E.2d 694, 701-02 (1978), *rev'd in part on other grounds*, 71 Ill. 2d 610, 401 N.E.2d 1390 (1978).

■ Having reviewed the report, we find that allowing the jury to examine the report was clearly prejudicial. Moreover, it is certainly possible that the jury would have acquitted defendant of resisting a peace officer had the jury not seen the arrest report. It is obvious that the jury was wavering between crediting defendant's testimony and crediting the State's witnesses since it acquitted as to one charge, convicted as to another and could not reach a verdict as to the other two counts. The police report in question served both to reinforce Weiler's testimony at trial as well as provide information that was not brought out in testimony.

The report paints a picture of defendant that, at best, is not flattering. Almost every utterance of defendant recorded in the report contains profanity. The report also contains statements allegedly made both by defendant and Brown that could be construed as their making threats to manufacture false accusations against the arresting officers. The report has Brown first accusing the officers of singling out defendant because of her race and then further accusing them of fabricating charges against her to protect themselves. According to the report, Brown then said he knows "how to play that game too." When Weiler noticed that defendant had torn her blouse and asked her about it, the report states defendant responded "I'll show you how I'm gonna fuck you."

The State argues that it was the defense that brought the report to the attention of the jury and, thus, the report must not have been prejudicial to the defense. While it is true that the defense attempted to use the report for impeachment of Weiler, the point on which the

report purportedly contradicted Weiler's testimony was trivial: the arrest form had a question "Victim injured?" and Weiler checked "no." However, adjacent to this, in a blank labeled "Nature of injuries and location on body" Weiler typed "sore shin; pulled hair." Moreover, the narrative portion of the report says "Long pushed Ofc. Taylor's hands away and grabbed a handful of Ofc. Taylor's hair. Long pulled Ofc. Taylor's head down and tried to push her to the floor. I stepped in to help restrain Long and Long kicked me twice in the left shin with her high heeled shoes." Viewed as a whole, the report did not contradict Weiler's testimony.

As the trial court's error in providing the arrest report to the jury is so prejudicial as to mandate reversal, we reverse the conviction for resisting a peace officer. Having so found, consideration of the remaining issues is unnecessary to our disposition. For this reason, we will not reach the dispute over jury selection. However, since there are some remaining issues that may recur, we will address them for guidance on remand.

### III

As the direct examination of Millaun Brown was commencing, with the jury in the box, the court interjected a question.

"THE COURT: Did you call the State's Attorney's Office and tell them you were coming in here to testify in this case?

THE WITNESS: No, sir.

THE COURT: Oh, you didn't. Oh, okay.

DEFENSE COUNSEL: This officer's name has been mentioned.

THE COURT: No, no, no. You don't understand. There's a rule in the Chicago Police Department that a police officer who intends to appear in a criminal case and testify on behalf of a defendant must call the State's Attorney's Office.

DEFENSE COUNSEL: There's a rule in the police department?

THE COURT: There's a rule in the police department.

DEFENSE COUNSEL: I don't think the rules within the police department govern what happens in this courtroom.

THE COURT: Okay. It's up to him. If he wants to continue, okay."

The State has not provided us with a citation for this "rule," nor after a diligent search have we found it among the rules and regulations of the Chicago police department. Accordingly, in the first instance, we are not even sure that the trial court's comments were correct. But even if such a regulation does exist, it was clearly not a proper subject of questioning. It was unrelated to a material issue in the case and the question may have impaired the witness's credibility. *Fugate v. Sears, Roebuck & Co.*, 12 Ill. App. 3d 656, 674, 299 N.E.2d 108, 122 (1973).

"In Illinois a witness's credibility may not be impeached by inquiry into specific acts of misconduct which have not led to a conviction." *Podolsky & Associates L.P. v. Discipio*, 297 Ill. App. 3d 1014, 1026, 697 N.E.2d 840, 848 (1998). Similarly, impeachment that tends to impugn a witness's general moral character is impermissible. *Fugate*, 12 Ill. App. 3d at 674, 299 N.E.2d at 121-22.

■ The judge's question may have served to undermine Brown's credibility by suggesting that it was improper for him to be testifying. The suggestion may also have had greater effect on the jury since it came from the judge rather than the State. "While the court has a wide discretion in the conduct of a trial, it must not invade the province of the jury by making comments, insinuations or suggestions indicative of belief or disbelief in the integrity or credibility of a witness." *People v. Marino*, 414 Ill. 445, 450, 111 N.E.2d 534, 537 (1953). Because jurors are watchful of a judge's conduct, a judge must exercise a high degree of care not to influence the jury. *People v. Williams*, 209 Ill. App. 3d 709, 718, 568 N.E.2d 388, 394 (1991). In the instant case, the judge should have posed the question, if at all, outside the presence of the jury. Given the limited scope of Brown's testimony, however, it should be noted these comments standing alone probably would be harmless error. See *People v. Heidorn*, 114 Ill. App. 3d 933, 449 N.E.2d 568 (1983). However, on retrial no such questioning should be undertaken in the presence of the jury.

## IV

At the hearing on the motion to quash, defendant's only testimony was that both of her headlights were working when she was stopped by the police. At trial, defendant testified that she was the victim of various types of misconduct at the hands of the arresting officers, Officer Weiler in particular. The trial court allowed the State to cross-examine her as to why she had not mentioned the alleged misconduct before. Defendant contends that this questioning was improper.

■ As a general proposition, impeachment through prior silence is permissible when it is shown that the witness had an opportunity to make a statement and, under the circumstances, a person would normally have made a statement. *People v. Conley*, 187 Ill. App. 3d 234, 244, 543 N.E.2d 138, 145 (1989).

> "A witness may be impeached by proof that she made a statement outside of court contradicting her in-court testimony or failed to speak under circumstances where it would have been natural to relate the matters testified to in court if true." M. Graham, Cleary & Graham's Handbook of Illinois Evidence, § 613.1, at 460 (5th ed. 1990).

When the witness is a criminal defendant, however, constitutional

protections come into play. *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). *Doyle* held that the prosecution may not impeach a defendant for exercise of the constitutional right to remain silent after the defendant has been given *Miranda* warnings. Once the police have assured a defendant that he or she has the right to remain silent, it would be fundamentally unfair, and thus violative of the due process guarantee of the fourteenth amendment, for the State to use the defendant's silence to impeach an explanation subsequently offered at trial. *Doyle*, 426 U.S. at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245. However, the United States Supreme Court has limited the holding of *Doyle* to situations where the silence of the accused is induced by government action. *Jenkins v. Anderson*, 447 U.S. 231, 240, 65 L. Ed. 2d 86, 95-96, 100 S. Ct. 2124, 2130 (1980). In other situations, *Jenkins* held, once a criminal defendant makes the decision to take the stand, he or she may be impeached with prior silence without offending the constitution. *Jenkins*, 447 U.S. at 238, 65 L. Ed. 2d at 94-95, 100 S. Ct. at 2129. If the defendant does not testify, however, the State may not use pretrial silence to prove guilt. 1 J. Strong, McCormick on Evidence § 127, at 484 (5th ed. 1999).

■ In this case, the State impeached defendant with her failure to tell her story to the media, to the police, and at the hearing on the motion to quash. On retrial, defendant may be impeached with her failure to tell her story to the media, subject to a finding by the trial court that under the circumstances it would have been natural for her to do so. The rule of *Doyle* does not apply to silence toward private parties. *Heidorn*, 114 Ill. App. 3d at 938, 449 N.E.2d at 574.

■ Defendant's failure to report the alleged misconduct to a government authority after she had been given her *Miranda* warnings is the more difficult question. In our view, defendant's failure to talk to the Forest Park police department is not a permissible subject of cross-examination as it may have been induced by the warnings. Whether she may be impeached with her failure to make a complaint to some other government authority after having been advised of her right to remain silent will depend on a factual finding. The court must determine whether it would have been reasonable for defendant to believe that information she provided to the authority in question might be used against her in court. If defendant did, she may have been relying on the assurance of her right to remain silent in neglecting to file a complaint. Under such circumstances, her silence would be "insolubly ambiguous." *Doyle*, 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244.

■ A defendant does not waive fifth amendment protections by testifying at a pretrial motion. *Simmons v. United States*, 390 U.S.

377, 393-94, 19 L. Ed. 2d 1247, 1258-59, 88 S. Ct. 967, 976 (1968). Therefore, the fact that defendant chose to testify at the hearing on the motion to quash, standing alone, does not necessarily mean that she may later be impeached with failure to recount the alleged misconduct at that time. However, if defendant chooses to testify *at trial*, her testimony at the pretrial motion may be used for impeachment, although the State may not introduce such evidence in its case in chief. *People v. Sturgis*, 58 Ill. 2d 211, 216, 317 N.E.2d 545, 548 (1974). Such cross-examination will, of course, still be subject to the ordinary requirements for impeachment through silence or omission. See *Conley*, 187 Ill. App. 3d at 244, 543 N.E.2d at 145. A preliminary finding that, under the circumstances, it would have been natural to relate the matters testified to in court if true will be necessary.

For the foregoing reasons, we affirm defendant's conviction for driving under the influence of alcohol but we reverse and remand the conviction for resisting a peace officer.

Affirmed in part and reversed in part; cause remanded.

McNULTY, P.J., and O'MARA FROSSARD, J., concur.