**2020 IL 125091**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125091)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
JOSEPH A. HOLLAHAN, Appellee.

*Opinion filed September 24, 2020.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The overarching issue in this appeal is whether the circuit court committed reversible error when, after the jury had retired to deliberate, the court granted the jury's request to review a video recording in evidence but played the video for the jury in the courtroom with the court, parties, and alternate jurors present. A divided appellate court answered that question in the affirmative. 2019 IL App (3d) 150556.

We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2018)) and now reverse the judgment of the appellate court.

¶ 2                                     BACKGROUND

¶ 3         The defendant, Joseph A. Hollahan, was charged in the circuit court of Kankakee County with the offense of aggravated driving while under the influence of alcohol. 625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(A) (West 2008). Defendant's initial jury trial ended in a mistrial when a video recording of the traffic stop was inadvertently played beyond the point of admissible evidence, exposing the jury to inadmissible evidence.

¶ 4         During defendant's second jury trial, a *redacted* video of the traffic stop was played for the jury.[1] The video depicted the manner of defendant's driving prior to the traffic stop and his interaction with the officer immediately after the stop, including field sobriety tests. Following the presentation of evidence, closing arguments, and instruction as to the applicable law, the jury retired to deliberate. Shortly thereafter, the jury asked to watch the video of defendant's traffic stop again. The trial court, in the exercise of its discretion, granted that request. The video was shown to the jury in the courtroom because the court did not have the "arrangement" necessary to allow the jury to view the video in the jury deliberation room. The court decided to allow defendant, the attorneys for defendant and the State, and two alternate jurors to remain in the courtroom while the jury watched the video. Defense counsel did not object to that procedure.[2] Before the jury was brought back into the courtroom, the court admonished defendant, the attorneys, and the alternate jurors that the jury would be watching the video and that "[n]o one will have any conversation." When the jury was brought back into the courtroom, the trial court addressed the jurors, stating:

            "Please come in and have a seat, we will not be talking to you other than to get the video, period. *** The jury has requested to see the video again. We do not have an arrangement to show it to you in your deliberation room. I have

_____

[1]The evidence adduced at defendant's second trial is set forth in the appellate court's opinion (2019 IL App (3d) 150556). As it is not relevant to our disposition, we do not reiterate it here.

[2]When the trial judge advised defense counsel, "Right now we need to bring the jury in, they want to see the video," defense counsel simply responded, "Okay," without further comment.

instructed everyone to not say a word and we will play the video for you. If you need to have the sound adjusted or anything that we can do, all right?"

After watching the video, the jury returned to the jury room to resume deliberations. Less than an hour later, the jury found defendant guilty.

¶ 5        On appeal, defendant asked the appellate court to find the procedure employed by the circuit court to be plain error, as defendant did not object to it at the time or raise it as an issue in a post-trial motion. The appellate majority concluded that the procedure did indeed constitute structural error—necessarily second-prong plain error. 2019 IL App (3d) 150556, ¶ 29. The majority acknowledged that appellate panels had declined to find reversible error under similar circumstances in three prior decisions. See, *e.g.*, *People v. Lewis*, 2019 IL App (4th) 150637-B, ¶¶ 97-100 (finding no error where the trial court allowed a 911 recording to be replayed for the jury in the courtroom in the presence of the parties after deliberations had begun); *People v. Johnson*, 2015 IL App (3d) 130610, ¶¶ 20-21 (finding no prejudicial error where the trial court refused to allow the jury to take a surveillance videotape into the jury room and instead had the jury review the video in the courtroom in the presence of the judge, the defendant, the state's attorney, and defense counsel); *People v. Rouse*, 2014 IL App (1st) 121462, ¶¶ 78-79 (finding no error where the trial court allowed the jury to review surveillance footage in the presence of both parties and the trial judge, cautioning the jury not to engage in deliberations or discussions while in the courtroom). The majority believed those decisions were wrongly decided and declined to follow them. 2019 IL App (3d) 150556, ¶ 23.

¶ 6        The majority noted that, in *Johnson* and *Rouse*, those appellate panels, in finding no error, relied principally upon two factors: (1) the third parties who were present when the video was replayed for the jury were instructed not to communicate with the jurors while the video was being played (*Johnson*, 2015 IL App (3d) 130610, ¶ 20), and they made no attempt to do so (*id.*; see also *Rouse*, 2014 IL App (1st) 121462, ¶ 79), and (2) after reviewing the video in the courtroom, the jurors returned to the jury room where they resumed private and unfettered deliberations (*Johnson*, 2015 IL App (3d) 130610, ¶ 20; *Rouse*, 2014 IL App (1st) 121462, ¶ 79). 2019 IL App (3d) 150556, ¶ 23.

¶ 7    The majority, here, believed neither of those factors eliminated or mitigated the prejudicial impact upon "deliberations" that occurred *while the jurors were viewing the video*. *Id.* The majority stated:

> "In each case, the jurors had no opportunity to discuss the video as they were viewing it or to pause or replay any portions of the video that they found of particular importance. (Indeed, in *Rouse*, the trial court instructed the jury that they could not engage in any deliberations or have any discussions about what they were watching while the recording was played.) Accordingly, in each case, the procedure employed by the trial court directly impeded the jury's deliberations. The mere fact that the jury could have discussed the video later in the jury room is immaterial. In each case, the jury was prevented from controlling the video, from freely discussing it, and from debating any issues relating to the video while they were watching it." *Id.*

The majority added:

> "[O]ur appellate court['s] decisions in *Lewis*, *Rouse*, and *Johnson* fail to acknowledge that the mere presence of the trial judge, the parties, and their attorneys during jury deliberations improperly intrudes upon the privacy of jury deliberations and has an inherently intimidating and inhibiting effect upon such deliberations. [Citations.] Such intrusions on the jurors' ability to freely discuss and debate the evidence should be deemed presumptively prejudicial. See *Olano*, 507 U.S. at 739 (acknowledging that '[t]here may be cases' where an intrusion upon jury deliberations by third parties 'should be presumed prejudicial,' and ruling that such intrusions are prejudicial when they 'exert[ ] a "chilling" effect' on the jurors or 'operate as a restraint upon the regular jurors' freedom of expression and action.' (Internal quotation marks omitted.))." *Id.* ¶ 24.

¶ 8    The majority took issue, particularly, with the appellate court's decision in *Lewis*. See *id.* ¶¶ 23-28. One notable point of disagreement concerned the *Lewis* court's assessment of a "deliberating" jury's in-court review of evidence. The majority stated:

> "In *Lewis*, our appellate court went so far as to state that '[w]hen a deliberating jury returns to the courtroom and, in the presence of the judge, the parties, the

lawyers, and court personnel listens again, in silence, to an audio recording, *the jury does nothing different from what it did before, when the recording originally was played*.' (Emphasis added.) *Lewis*, 2019 IL App (4th) 150637-B, ¶ 98. However, a jury's viewing of a video recording during trial is critically different from its viewing of that same recording *during deliberations*." (Emphasis in original.) *Id.* ¶ 25.

Again, citing the United States Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1992), the appellate court stated the generic principle that, once deliberations have begun, the jurors must be shielded from any outside influences that improperly impede or inhibit their deliberations. 2019 IL App (3d) 150556, ¶ 25.

¶ 9        Justice Carter, dissenting, found no error at all, certainly no plain error. *Id.* ¶ 37 (Carter, J., dissenting). Citing this court's opinion in *People v. Williams*, 97 Ill. 2d 252, 292 (1983), he noted that whether evidentiary items should be taken to the jury room during deliberations is a matter within the discretion of the trial court and the trial court's decision on the matter is not reversed absent an abuse of discretion to the prejudice of the defendant. 2019 IL App (3d) 150556, ¶ 38 (Carter, J., dissenting). Citing, *inter alia*, the appellate court's opinion in *Lewis*, he observed, "Similarly, the mode and manner in which a trial court allows a jury to review a piece of evidence during jury deliberations falls within the scope of the court's inherent authority to manage its courtroom and is a matter of the court's discretion." *Id.* Justice Carter noted, with respect to the burden of the defendant in plain error review: "[W]hen the issue is unpreserved—as in the instant case—the burden of establishing prejudice remains on the defendant and does not shift to the State. *McLaurin*, 235 Ill. 2d at 497-98; see also *Olano*, 507 U.S. at 740-41." *Id.* ¶ 40. Applying those principles, Justice Carter would have concluded the defendant had not shown that either the trial judge, the attorneys, the defendant, or the alternate jurors engaged in a prejudicial communication with any juror about a matter pending before the jury or that improper extraneous information reached the jury. *Id.* ¶ 41. Thus, there was, in his view, no basis for reversal.

¶ 10                                    ANALYSIS

¶ 11        We begin our analysis with general principles of review applicable in this
context. "It is well-established that whether evidentiary items *** should be taken
to the jury room rests within the discretion of the trial judge, whose decision will
not be disturbed unless there was an abuse of discretion to the prejudice of the
defendant." *People v. Hudson*, 157 Ill. 2d 401, 439 (1993). Moreover, the trial court
has the discretion to grant or deny the jury's request to review evidence. *People v.
Kliner*, 185 Ill. 2d 81, 163 (1998).

¶ 12        Since defendant failed to preserve this issue for review via contemporaneous
objection and inclusion of the issue in a post-trial motion, we are concerned here
with plain error review. Illinois Supreme Court Rule 615(a) provides as follows:

        "(a) Insubstantial and Substantial Errors on Appeal. Any error, defect,
    irregularity, or variance which does not affect substantial rights shall be
    disregarded. Plain errors or defects affecting substantial rights may be noticed
    although they were not brought to the attention of the trial court."[3]

The plain error doctrine is applicable when

    " '(1) a clear or obvious error occurred and the evidence is so closely balanced
    that the error alone threatened to tip the scales of justice against the defendant,
    regardless of the seriousness of the error, or (2) a clear or obvious error occurred
    and that error is so serious that it affected the fairness of the defendant's trial
    and challenged the integrity of the judicial process, regardless of the closeness
    of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting
    *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 13        Both sides of the divided appellate panel in this case cited the Supreme Court's
decision in *Olano* to support aspects of their respective positions. So, we begin with
a discussion of *Olano* and the principles espoused therein—principles that this court
has determined are not significantly different from our own when it comes to plain
error review. See *People v. Herron*, 215 Ill. 2d 167, 186 (2005) ("[T]he plain-error
standard in *** *Olano*, *** at its core, *** is the same standard we already use.

_____

    [3]Rule 52(b) of the Federal Rules of Criminal Procedure is the federal counterpart to our Rule
615(a).

Ultimately, plain error involves the same considerations in federal and state court."). We note that remedial application of the plain error doctrine is *discretionary* in both the federal and state systems. See *Olano*, 507 U.S. at 732 ("Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals"); *People v. Clark*, 2016 IL 118845, ¶ 42 ("[R]emedial application of the plain error doctrine is discretionary.").

¶ 14       The claimed error in *Olano* concerned the presence of alternate jurors in the jury room while the jury was deliberating. Federal Rule of Criminal Procedure 24(c) provided in pertinent part: " 'An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.' " (Emphasis omitted.) *United States v. Olano*, 934 F.2d 1425, 1436 (9th Cir. 1991) (quoting Fed. R. Crim. P. 24(c)).[4] Because the defendants had not objected to the alternates' presence during deliberations in their case, the court of appeals engaged in "plain error" review pursuant to Rule 52(b). *Id.* The court relied on the "language of Rule 24(c), Rule 23(b), the Advisory Committee Notes to Rule 23, and related Ninth Circuit precedent" to hold that Rule 24(c) barred alternate jurors from attending jury deliberations unless the defendant, on the record, explicitly consented to their attendance. *Id.* at 1436-37. The court of appeals found that Rule 24(c) was violated because the district court did not obtain individual waivers from each defendant personally, either orally or in writing. *Id.* at 1438. It then concluded that the presence of alternates in violation of Rule 24(c) was "inherently prejudicial" and reversible *per se*. *Id.* at 1438-39. The court of appeals holding was premised upon the concern that the alternate jurors might not have followed the district court's prohibition on participation and, even if they did not participate *orally*, their "attitudes" may have been " 'conveyed by facial expressions, gestures or the like, [and thus] may have had some effect upon the decision of one or more jurors.' " *Id.* at 1438 (quoting *United States v. Virginia Erection Corp.*, 335 F.2d 868, 872 (4th Cir. 1964)).

¶ 15       The United States Supreme Court reversed the judgment of the court of appeals. First, the Court equivocated as to whether there even was an "error" to be considered pursuant to plain error review:

_____

[4]Rule 24(c) has since been amended to eliminate this requirement.

- 7 -

"The presence of alternate jurors during jury deliberations is no doubt a deviation from Rule 24(c). The Rule explicitly states: 'An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.' It is a separate question whether such deviation amounts to 'error' when the defendant consents to the alternates' presence. The Government supposes that there was indeed an 'error' in this case, on the premise that Rule 24(c) is nonwaivable, see Reply Brief for United States 9, n.4, and we assume without deciding that this premise is correct. The Government also essentially concedes that the 'error' was 'plain.' " *Olano*, 507 U.S. at 737.

¶ 16     Proceeding on the *assumption* that there *was* error, the Court then considered whether the error

" 'affect[ed] substantial rights' within the meaning of Rule 52(b), and conclud[ed] that it did not. The presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact. Nor have respondents made a specific showing of prejudice. *** [W]e see no reason to presume prejudice here." *Id.*

The Court found that a showing of prejudice was required: "Assuming *arguendo* that certain errors 'affec[t] substantial rights' independent of prejudice, the instant violation of Rule 24(c) is not such an error." *Id.* The Court observed that it had generally analyzed outside intrusions upon the jury for prejudicial impact, and it saw no reason to deviate from that course in the case *sub judice*. *Id.* at 738-39.

¶ 17     The Court acknowledged, "[i]n theory, the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors." *Id.* at 739. The Court observed that, if the alternates abided by the trial court's instructions, neither of those scenarios would be cause for concern. However, nonetheless, the Court concluded that the defendants—though required to do so—had "made no specific showing that the alternate jurors in this case either participated in the jury's deliberations or 'chilled' deliberation by the regular jurors." *Id.*

¶ 18    Thus, without deciding whether there was prerequisite error in allowing non-jurors (the alternates) to be present in the jury room *while the jurors were actually deliberating*, the Supreme Court concluded, without a showing of prejudice—either through non-juror participation verbally or through "body language," or a "chilling effect" on the regular jurors—the defendant had not demonstrated plain, reversible error. That "even if" analysis still leaves open the question of whether the presence of non-jurors, while video evidence is being replayed for the jurors in the courtroom, is error at all.

¶ 19    In defendant's brief—long on the number of general propositions, short on in-depth discussion of any—defendant cites cases for the proposition that other states and federal courts allow deliberating juries to privately review admitted recordings without restrictions or supervision. It is worth noting that the *defendants* in those cases challenged the trial courts' actions in that regard and the trial courts' actions were upheld after abuse-of-discretion review. Those cases do *not* stand for the proposition that review by the jury *must* take place privately and without restriction, only that it *may*.

¶ 20    *State v. Castellanos*, 935 P.2d 1353, 1355 (Wash. 1997), cited by defendant, is illustrative. Therein, the Supreme Court of Washington held the decision to allow the jury unlimited access to body wire tape recordings of drug transactions and playback equipment during deliberations was not an abuse of discretion. In reaching that result, the court stated:

> "[I]n *State v. Frazier*, 99 Wash.2d 180, 188, 661 P.2d 126 (1983) this court held 'a tape recorded statement of the defendant and a properly authenticated transcript thereof may, within the sound discretion of the trial court, be admitted as exhibits and reviewed by the jury during its deliberations.' At issue in *Frazier* was a tape recording of an oral statement the defendant had previously given the police. We stated 'such exhibits [may] go to the jury if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial.' *Id.* at 189, 661 P.2d 126. We concluded:
>
> > 'It does not appear to us that the admission of a tape recording as an exhibit, in and of itself, overly emphasizes the importance of that evidence. Nor is its admission in any way an impermissible comment on the evidence by the judge. *Since the jury could have refreshed its recollection of the contents of*

*the taped statement by rehearing the tape in open court with the trial judge's permission ... we see no reason to automatically prevent the jury from taking such exhibits into the jury room.* While trial court judges should continue to be aware of the potential for overemphasizing the importance of such evidence and should prevent such exhibits from going to the jury if unduly prejudicial, we think that decision is best left to the sound discretion of the trial judge.' " (Emphasis added.) *Id.*

The *Castellanos* court concluded:

"We also noted steps taken by the trial court in *Frazier* to avoid undue prejudice. These included allowing the taped statement to be admitted as a jury exhibit without further comment and without a playback machine. *Id.* at 191, 661 P.2d 126. This forced the jury to request additional replays of the tape, and thus 'the trial court judge assured himself that he would be apprised of and would retain some degree of control over the number of times the jury could review that particular piece of evidence.' *Id.* However we did not foreclose the trial court from an alternative approach." *Id.*

¶ 21 In other words, the trial court *could* send the recording to the jury room without restriction or supervision, but it was not required to do so.

¶ 22 In fact, as the State notes in its brief, two state supreme courts, after conducting extensive surveys of cases in other jurisdictions, concluded—consistent with the analysis in *Lewis* and *Rouse*—that "[c]ourts in other jurisdictions have *** found no abuse of discretion by the trial court in allowing the jury to review or rehear recorded evidence in open court" (*State v. Davidson*, 509 S.W.3d 156, 203 (Tenn. 2016)), that it is, in fact, "universally accepted" that a trial court may allow the jury, during deliberations, to return to open court to review a tape recording admitted in evidence (*State v. Hughes*, 691 S.E.2d 813, 826-27 (W. Va. 2010)). See also *State v. Garland*, 942 N.W.2d 732 (Minn. 2020).

¶ 23 Considering those authorities and the Supreme Court's analysis in *Olano*, we find defendant has demonstrated no prejudice attributable to "clear or obvious error"—for purposes of plain error review—in the way the trial court chose to proceed in this case. As in *Olano*, this defendant has not shown that any non-jurors in the courtroom participated "verbally"—the trial court specifically advised those

- 10 -

present that there would be "no conversation"—or through "body language." Nor is there any indication that the presence of non-jurors "chilled" deliberation by the regular jurors. The analysis of *Olano*, in circumstances arguably comparable to those now before this court, requires a showing of prejudice by a defendant claiming plain error; prejudice will not be presumed. This defendant has made no showing of prejudice.

¶ 24 That assumes there even *was* error in the way the trial court proceeded. We do not so find. Defendant assumes that "deliberations" were ongoing when the court brought the jurors back into the courtroom and allowed them another viewing of the video in the presence of non-jurors.

¶ 25 We reject that assumption as well. In that regard, we reject, specifically, the notion that deliberations, once begun, cannot be suspended by the trial court. Clearly, a court may, after submission of the case to the jury, suspend deliberations and bring the jury back into the courtroom for supplemental instruction, when warranted, or even allow the jurors to separate temporarily outside the presence of a court officer with proper admonishments. The latter is specifically provided for by Illinois Supreme Court Rule 436 (eff. July 1, 1997), which states as follows:

> "(a) In criminal cases, either before *or after submission of the cause* to the jury for determination, the trial court may, in its discretion, keep the jury together in the charge of an officer of the court, or the court may allow the jurors to separate temporarily outside the presence of a court officer, overnight, on weekends, on holidays, or in emergencies.

> (b) The jurors shall, whether permitted to separate or kept in charge of officers, be admonished by the trial court that it is their duty (1) not to converse with anyone else on any subject connected with the trial until they are discharged; (2) not to knowingly read or listen to outside comments or news accounts of the procedure until they are discharged; (3) not to discuss among themselves any subject connected with the trial, or form or express any opinion on the cause until it is submitted to them for deliberation; and (4) not to view the place where the offense was allegedly committed." (Emphasis added.)

Obviously, the process of jury deliberation does not continue when the individual jurors are separated and at home with their families. We believe it is appropriate,

in this context, to make clear that "jury deliberation" is not some uncontrollable chain reaction—as defendant would have it—that, once set in motion, is beyond the power of the trial court to suspend, control, and circumscribe as the court reasonably sees fit in the exercise of its discretion. Moreover, "jury deliberation" is a *collective* process that necessarily entails communicative interchange amongst the members of the jury.[5] Nothing of record in this case suggests that took place in the courtroom while the jurors were watching the video replay. When the court had the jury brought back into the courtroom, the court explained: "We do not have an arrangement to show [the video] to you in *your deliberation room*." (Emphasis added.) Implicit in that statement is the understanding that deliberations were appropriate in that location and no other. The court also advised the jury that it had "instructed everyone to not say a word." There is no suggestion of record that anyone *did* say a word—not the court, not the attorneys, and not the jurors. More to the point, there is no suggestion that the jurors communicated amongst themselves while in the courtroom. In short, deliberations did not take place while the jury was reviewing the video.

¶ 26                                    CONCLUSION

¶ 27        Because deliberations were not taking place in this case while the jurors were watching the video in the presence of non-jurors and there was no communication with non-jurors, there was no error. We reiterate, with respect to our analysis of prejudice *supra*, that this case presents circumstances different from *Olano* insofar as the non-jurors in that case—the alternates—were *in* the jury room *while actual deliberations were taking place*. We note, however, even apart from that distinction, the Supreme Court, in *Olano*, did not find the presence of non-jurors in

---

[5]"Deliberation" by a jury is a *collective* process. "As *Black's Law Dictionary* 459 (8th ed. 2004) states, 'deliberation' by a jury refers to 'the process by which a jury reaches a verdict, as by analyzing, discussing, and weighing the evidence.' See also 89 CJS 425 § 790 (2001) (defining 'deliberation' as 'a collective process, not the solitary ruminations of individual jurors'); 89 CJS 426 § 791 (2001) (noting that premature jury deliberations are improper, in part, because 'they are likely to involve only a subset of the jury, contrary to the goal of collective deliberations')." *State v. Vega*, 139 P.3d 260, 263 n.4 (Or. 2006). The essence of jury deliberation is the joint or collective exchange of views among individual jurors so that the verdict reached is the product of that collective interchange. See *State v. Morgan*, 84 A.3d 251, 259 (N.J. 2013).

the jury room to be plain, reversible error, where no communication took place between jurors and non-jurors.

¶ 28    In sum, we find there was no error. However, even if there were, defendant has not shown that he was prejudiced by the procedure employed by the circuit court. For the reasons stated herein, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 29    Appellate court judgment reversed.

¶ 30    Circuit court judgment affirmed.