NOTICE
Decision filed 07/14/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180467-U

NO. 5-18-0467

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 17-CF-519 |
| | ) | |
| REGINALD GARRETT, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The defendant was not denied a fair trial where testimony of the detective was not an improper lay opinion regarding the ultimate issue. The defendant was also not denied a fair trial because the prosecutor's remarks during closing argument did not improperly shift the burden of proof, and the prosecutor's misstatement of evidence during closing argument did not prejudice the defendant. Further, it was not error for the trial court to allow the jury to view the video evidence during juror deliberations, in the courtroom while in the presence of the trial court and the parties. Finally, remand for a *Krankel* inquiry (*People v. Krankel*, 102 Ill. 2d 181 (1984)) is not necessary because the trial court conducted an adequate inquiry into the defendant's allegations of ineffective assistance of counsel.

¶ 2   Following a jury trial, the defendant, Reginald Garrett, was found guilty of one count of unlawful delivery of a controlled substance (720 ILCS 570/401 (West Supp.

1

2017)). On appeal, the defendant argues that he did not receive a fair trial and that remand for a *Krankel* inquiry is necessary. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4     On December 18, 2017, the State charged the defendant with unlawful delivery of a controlled substance within 1000 feet of a church (720 ILCS 570/407(b)(2) (West 2016)). The information alleged that the defendant delivered a substance containing less than one gram of heroin to a confidential source for the Mt. Vernon Police Department. On December 26, 2017, the defendant was indicted by a grand jury for the same offense. On March 27, 2018, the first day of the defendant's trial, the State filed an amended information which charged the defendant with unlawful delivery of a controlled substance (720 ILCS 570/401 (West Supp. 2017)), removing the allegation that the defendant delivered a controlled substance within 1000 feet of a church. The evidence adduced at the defendant's jury trial is as follows.

¶ 5     Detective Vic Koontz testified that on January 5, 2017, he and Detective Scott Smith met with a confidential source, Brandy Barns, to conduct a "controlled buy." Prior to the controlled buy, Detective Koontz searched Barns and the car she was driving to ensure that Barns had not brought any drugs with her. Detective Koontz did not find any illegal substances during the searches. The detectives also outfitted Barns and the car with video recording devices and provided her with $40 in "officially advanced funds" to purchase narcotics during the controlled buy.

¶ 6     At trial, two video recordings, which captured Barns's activity from the time she left the detectives until she met with them again, were admitted into evidence. The video

recordings showed Barns leaving in her car, ostensibly, to meet with the defendant. While driving, Barns made a phone call and was told to travel to "21st and Lamar." Barns continued driving and made another phone call. An unidentified male answered the phone and informed Barns that she had "just passed" him. The two continued talking until Barns came to a stop. The defendant subsequently entered the passenger side of the car.[1] His left hand was in his coat pocket. Barns proceeded to drive with the defendant in the car for approximately 1½ minutes. While Barns was driving, the defendant removed his hand from his coat pocket and placed his hand near his left leg. The defendant subsequently accepted money from Barns but returned a portion of the money. Shortly thereafter, Barns stopped vehicle and the defendant got out of the car.

¶ 7    After the defendant exited the car, Barns continued driving, and the video recording showed Barns holding a small plastic wrapper and money. Barns indicated on the recording that the defendant returned $20 to her because the defendant "only had two." Barns removed a small foil package from the wrapper and held it in front of the camera. As Barns was driving, she made another phone call, and, again, an unidentified male answered the phone. Barns asked the individual, "Hey, what happened, you only had two?" Barns then stated she was supposed to share with a friend, and the male voice indicated that he returned $20 of the $40 that Barns had paid. Barns also told the male that he has the "best s*** in

_____

[1]In the recordings, the defendant can be heard saying, "I'm high as a mother f***," immediately after he entered the car. Prior to trial, the defendant made an oral request to have this portion of the videos excluded when the videos were played for the jury. The trial court granted the defendant's request, and this statement was muted when the recordings were played for the jury.

town." After ending this call, Barns called the detectives and received directions to meet with them again.

¶ 8   Once Barns returned to the location where she had been instructed to go, Detective Koontz "debriefed" her regarding the controlled buy. Barns told the detectives what had occurred when she met with the defendant. Barns also provided the detectives with $20 of the officially advanced funds and two small quantities of what appeared to be heroin. The detectives searched Barns's car again before concluding their meeting. Detective Koontz also field tested the suspected heroin, and the substance tested positive for the presence of heroin. The suspected heroin was packaged as evidence and sent to the Illinois State Police crime lab, which confirmed that the suspected substance did, in fact, contain heroin.

¶ 9   On cross-examination, Detective Koontz admitted that neither he nor anyone else searched under Barns's shirt, bra, or panties, but Detective Koontz did search Barns's coat pockets. Detective Koontz could not remember if Barns removed her coat during the search, although he doubted it, and could not recall what type of pants or shirt she was wearing. Detective Koontz also testified that he typically searches a confidential source's shoes and socks but could not recall if he did so in this case. Regarding the search of the car, Detective Koontz testified that he regularly checks the seats, console, and glove compartment of the cars he searches prior to a controlled buy but could not recall if he searched the car's visors in this case or a hole in the door panel of the car. Detective Koontz testified that he likely searched this hole but could not state for certain that he did. While Barns met with the defendant, Detective Koontz remained in the area, but did not have a direct line of sight on Barns. Detective Koontz also testified that he documented the phone

4

number that Barns had called but did not obtain any phone records to determine the name of the individual associated with the phone number.

¶ 10   Next, Barns testified regarding her background and the controlled buy. Barns indicated that she had prior felony convictions for possessing illegal drugs and struggled with addiction. At the time of the trial, Barns had pending cases in Jefferson County Illinois. Although she hoped for leniency, the State had not made Barns any offers in exchange for her testimony. Barns testified that she reached out to the detectives regarding a controlled buy after she was arrested for possession of methamphetamine because the arresting officer told Barns that the detectives could "make this all go away." Barns admitted that she agreed to do the controlled buy out of desperation because she was concerned about returning to prison.

¶ 11   When Barns met with the detectives, she arrived in a car that she borrowed from a friend. Barns indicated that she was familiar with the interior of the car because she had been in the car numerous times. Barnes testified that the detectives searched both her person and the car. Barns could not recall the type of clothing she wore or whether the detectives patted Barns down over her shirt. Barns admitted that she did not remember details because she had been high from using heroin and methamphetamine a few hours before the controlled buy.

¶ 12   Barns testified that she called the defendant while she was driving to determine his location so that she could meet him to get heroin. Barns subsequently picked up the defendant, who provided her with heroin. Barns indicated that she gave the defendant $40, but the defendant returned $20 to Barns. Barns confirmed that she did not make any

additional stops or talk to anyone other than the defendant, but did not recall the phone call after she met with the defendant. After Barns returned to the detectives, she provided them with the $20 the defendant had returned to her during the transaction. Barns confirmed that she did not have any illegal drugs with her that the detectives did not find while searching her or the car.

¶ 13 The State rested its case, and the defendant did not present any evidence. Because the defendant challenges certain remarks the prosecutor made during the State's closing argument, we will set forth those remarks in context. In first portion of the State's closing argument, the prosecutor summarized the evidence presented by the State and argued that the evidence proved the defendant's guilt beyond a reasonable doubt. The prosecutor then stated:

> "Now, I expect that you're going to hear [defense counsel] give an alternative theory as to what happened. The theory that [defense counsel] may or may not provide to you will be supported by no evidence. It will not be based in fact. It will, in fact, be a conjecture, if made."

The prosecutor asked the jury to consider the evidence and argued that the evidence led to a verdict of guilty.

¶ 14 In the defendant's closing argument, defense counsel reminded the jury that the defendant did not have any burden to produce evidence. Defense counsel proceeded to argue that the defendant's theory—that Barns obtained heroin from another source prior to

meeting with the defendant—was supported by the evidence.[2] Defense counsel alleged that Barns would have done anything to avoid going to prison and expected some sort of leniency for participating in the controlled buy. Defense counsel suggested that Barns hid the drugs from the detectives who, according to defense counsel, did not conduct a thorough search of Barns or the car. Defense counsel also argued that the video evidence showed only a "flurry of activity," but not a drug deal. Defense counsel asserted that the video evidence did not show a "hand-to-hand transaction" or a heroin package in the defendant's hand. Defense counsel also directed the jury's attention to a "crinkling sound" in the video and argued that the sound was Barns handling "the foils" before and after she met with the defendant. Defense counsel concluded that reasonable doubt existed because "we don't know for a fact where these drugs came from."

¶ 15    In rebuttal, the prosecutor stated that the evidence showed Barns calling the defendant to get heroin and that Barns "testified that she called [the defendant] after she picked it up and asked why he only had the amount that he did." The prosecutor argued that there was no other purpose for Barns to meet with the defendant, other than to obtain heroin. The prosecutor then stated, "It's [defense counsel]'s job to raise doubt, and she's very good at what she does. [Defense counsel] has not raised a reasonable doubt here." The prosecutor asserted that a drug deal had occurred and argued that the State had proven the defendant's guilt beyond a reasonable doubt.

_____

[2]In her opening statement, defense counsel argued that the evidence would show, through cross-examination, that Barns brought the heroin to the controlled buy.

¶ 16    After closing arguments, the trial court submitted the case to the jury. On March 28, 2018, during deliberations, the jury requested to see the "second video; specifically, the time from when [the defendant] approaches the car forward." By joint agreement of the parties, the video was played for the jury in the courtroom while in the presence of the trial court and the parties. After completing deliberations, the jury returned a verdict of guilty that same date.

¶ 17    On April 1, 2018, the defendant sent a letter to the trial court making various allegations against defense counsel. In his letter, the defendant stated that he had previously inquired of defense counsel about a plea deal for a prison term of less than 18 years and whether he could be granted a furlough. Defense counsel allegedly responded to the defendant that he would not be granted a furlough even if he were "set on fire." The defendant further stated that because of defense counsel's "harsh words," the defendant no longer wished to be represented by defense counsel. The defendant alleged, however, that he had received correspondence from his lawyer, and that after he received the letter from defense counsel, the defendant felt that he had no choice but to work with her.[3] The defendant also alleged that defense counsel only made herself available one time to view the video evidence. The defendant stated that he was only able to review the video once before trial, but without sound because defense counsel was having issues with the audio. Therefore, he claimed that the first time he was able to view the video with sound was when it was played before the jury. Finally, the defendant claimed that defense counsel

_____

[3]The defendant attached the correspondence from defense counsel dated March 12, 2018, that was referenced in the April 1, 2018, letter.

convinced him not to testify. The defendant stated that he would have testified that he delivered morphine, not heroin, to Barns because he was trying to help Barns "kick" her heroin habit. The defendant indicated that counsel advised him that testifying as such was not in his best interest.

¶ 18    In defense counsel's letter dated March 12, 2018, counsel advised the defendant that if he did not wish to proceed with defense counsel, the trial court would not appoint the defendant a new attorney because the defendant was not entitled to choose his attorney unless he hired a private attorney. Defense counsel informed the defendant that he could represent himself but advised against doing so. Defense counsel also explained her reasons for not requesting a furlough or filing an additional motion for bond reduction. Defense counsel further addressed an argument from the defendant wherein he claimed that he had returned drugs which he previously purchased from Barns. Defense counsel told the defendant that this was not a defense to the charge of delivery of a controlled substance. At the conclusion of the letter, defense counsel explained that she believed the defendant should enter an "open plea" and request a lesser sentence from the trial court.

¶ 19    On May 15, 2018, defense counsel filed a "Motion for New Trial or Alternatively, for Judgment Notwithstanding the Verdict" alleging, *inter alia*, that the State had improperly shifted the burden of proof during closing argument. At the hearing on the defendant's posttrial motion, defense counsel brought the defendant's letter to the trial court's attention. Defense counsel stated that she had discussed the allegations with the defendant but believed the trial court should question the defendant about the matter. The trial court indicated that it had not read the defendant's letter. When the trial court asked if

the defendant would like to make any statement, the defendant responded: "[A]ll I want to say is I put it in your hands. You are the judge. Whatever you think is best." The trial court informed the defendant, "[I]f you have any complaints to make about [defense counsel], then now is the time to do it. If you don't have, [*sic*] that's fine too." The defendant indicated that he had "some very important things" to say and requested that the trial court read the defendant's letter. The trial court then read the defendant's letter. After reading the defendant's letter, the following colloquy occurred:

"THE COURT: *** All right, [defendant], was there anything else that you wish to add?

THE DEFENDANT: No, sir.

THE COURT: Okay. The Court has read the letter. [Defendant], do you wish to proceed with [defense counsel] as your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then, I think first up on the agenda is the Motion for New Trial or Alternatively for Judgment Notwithstanding the Verdict ***. [Defense counsel], are you ready to proceed on that?"

¶ 20    The trial court then heard arguments regarding the defendant's posttrial motion. At the conclusion of the arguments, the trial court denied the motion. After doing so, the trial court again offered the defendant an opportunity to make a statement regarding defense counsel's representation. The defendant stated he was "fine" with everything, including defense counsel.

10

¶ 21    On July 5, 2018, the trial court sentenced the defendant to seven years in the Illinois Department of Corrections followed by three years of mandatory supervised release. A motion to reconsider the defendant's sentence was denied. This appeal follows.

¶ 22                                    ANALYSIS

¶ 23    The defendant contends that he was denied a fair trial. First, the defendant argues that Detective Koontz was permitted to offer an improper lay opinion that the defendant delivered heroin to Barns, the ultimate issue to be decided by the jury. Next, the defendant asserts that the prosecutor made improper remarks during closing argument. The defendant also now contends that during jury deliberations, it was improper for the trial court to allow the jury to view the video in the courtroom while in the presence of the trial court and the parties. Finally, the defendant claims that the trial court failed to adequately address the defendant's allegations of ineffective assistance of counsel and asks this court to remand this matter for a *Krankel* inquiry.

¶ 24                        A. The Defendant's Fair Trial Claims

¶ 25    As a preliminary matter, the defendant acknowledges that the challenges to the fairness of his trial were not properly preserved for appellate review but requests that this court review them for plain error. The plain error doctrine allows a reviewing court to consider unpreserved error when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the

11

integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

In both instances, the burden of persuasion lies with the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). The first step in plain error analysis is to determine whether any error occurred at all. *Piatkowski*, 225 Ill. 2d at 565.

¶ 26                    1. The Testimony of Detective Koontz

¶ 27    The defendant asserts that he was denied a fair trial because Detective Koontz was allowed to offer a lay opinion regarding the ultimate issue in the case—whether the defendant delivered heroin to Barns. The defendant argues that Detective Koontz's lay opinion was improper because he did not personally observe the defendant deliver heroin to Barns. Generally, we review a court's evidentiary ruling for an abuse of discretion (*People v. Lerma*, 2016 IL 118496, ¶ 23), but the defendant made no objection at trial to the testimony he now challenges.

¶ 28    The defendant challenges the following portions of Detective Koontz's testimony:

"Q. So she used part of the officially advanced funds in order to purchase heroin?

A. Yes. Yes, [the defendant] gave her back—she gave both bills, two $20 bills to [the defendant] for the heroin. He gave her $20 back in change.

* * *

Q. Would you recognize the heroin taken from [the defendant] by Brandy Barns today?

A. Yes.

12

＊＊＊

Q. ＊＊＊ I am now going to show you what I am purporting to call People's Exhibit 3. Detective Koontz, do you recognize this?

A. Yes.

Q. What is this?

A. That would be the quantity of heroin that [the defendant] provided to Brandy Barns on January 5."

¶ 29    The defendant's challenge to this testimony misconstrues the distinction between a lay opinion and the reiteration of a conclusion made as a result of the detective's investigation. A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact. *People v. Munoz*, 398 Ill. App. 3d 455, 487 (2010). Although Detective Koontz did not personally observe the controlled buy, his testimony was clearly extrapolated from his investigation. Detective Koontz testified that he searched Barns and the car prior to the controlled buy and found no illegal substances. Detective Koontz also provided Barns with $40 to purchase heroin. Detective Koontz testified that, after the controlled buy, he debriefed Barns regarding her interaction with the defendant and, again, searched the car. Barns also returned $20 of the funds provided and furnished two small quantities of heroin. The suspected controlled substance field tested positive for heroin, was packaged as evidence, and was submitted to the Illinois State Police crime lab, which determined that the substance in the foil wrappers was heroin. In addition to the foregoing, Detective Koontz

13

viewed the video-recorded evidence capturing the interaction between Barns and the defendant. Thus, Detective Koontz's testimony was rationally based upon his perception and helpful to a clear understanding of his testimony as a whole.

¶ 30    Furthermore, Detective Koontz's testimony was tied to his understanding that the substance the defendant delivered to Barns was heroin. Clearly, this testimony was offered to explain the course of his investigation and the reason for the defendant's arrest. See *People v. Martin*, 2017 IL App (4th) 150021, ¶ 32. In *Martin*, the appellate court determined that a police officer's testimony that the defendant was driving the car was not an improper lay opinion because "it was not offered as a present opinion on the defendant's credibility but, rather, was a statement of past belief offered to explain the course of investigation, *i.e.*, why defendant was ultimately arrested." *Martin*, 2017 IL App (4th) 150021, ¶ 32 (citing *People v. Hanson*, 238 Ill. 2d 74, 101 (2010) (finding that testimony regarding a past opinion was not improper opinion testimony)). In *Hanson*, the supreme court drew a line, "present opinion testimony is improper; previous opinion testimony is permissible." *People v. Degorski*, 2013 IL App (1st) 100580, ¶ 84. In examining whether testimony was a present or past opinion, the courts in *Martin* and *Degorski* looked to the tense of the testimony and determined that questions and testimony phrased in the past tense supported a conclusion that a witness's testimony was a past, not present, lay opinion. *Martin*, 2017 IL App (4th) 150021, ¶ 32; *Degorski*, 2013 IL App (1st) 100580, ¶ 78. Upon a review of Detective Koontz's testimony, it is clear that Detective Koontz was identifying the substance that had been determined to be heroin, a conclusion which ultimately led to

14

the defendant's arrest.[4] We do not believe Detective Koontz's testimony was an improper lay opinion, as the identification of the heroin taken from Barns and the statement that Barns used the funds provided to purchase heroin were facts within the setting of the controlled buy.

¶ 31   The defendant also asserts that the following testimony from Detective Koontz "reinforce[d] his testimony about the ultimate issue" and improperly bolstered Barns's credibility.

> "Q. *** Detective Koontz, based on the recordings you have seen from January 5, 2017, also, based on your debriefing with Brandy Barns, did Brandy Barns go anywhere from the time she met with you to install the recording devices, to the time she purchased the heroin from [the defendant]?
>
> A. No.
>
> Q. And you can say this with certainty?
>
> A. Yes."

¶ 32   It is true that a witness is not permitted to comment on the veracity of another witness's credibility. *Munoz*, 398 Ill. App. 3d at 487. The trier of fact is tasked with the responsibility of assessing the credibility of a witness, determining the appropriate weight of the testimony, and resolving conflicts or inconsistences in evidence. *People v. Evans*,

---

[4]In contrast, the prosecutor in this case had also asked Detective Koontz, "So are you of the professional opinion that Brandy Barns did, in fact, purchase heroin from [the defendant] on January 5, 2017 ***?" Detective Koontz replied, "Absolutely." The question by the prosecutor here called for a present opinion. Defense counsel objected on the basis that Detective Koontz's testimony went to the ultimate issue of fact for the jury to decide. The trial court sustained the objection and instructed the jury to disregard Detective Koontz's answer.

209 Ill. 2d 194, 211 (2004). Here, Detective Koontz's testimony did not vouch for Barns's credibility. Again, Detective Koontz was testifying regarding his investigation which included his debrief of Barns and his viewing of the videos subsequently admitted into evidence. Based upon his personal knowledge, Detective Koontz was simply summarizing what he personally observed on the videotapes and the sequence of events during the controlled buy.

¶ 33     In sum, we find no error in any of the challenged statements. Therefore, we need not continue our plain error analysis. Furthermore, we need not address whether the defendant received ineffective assistance of counsel, because we have determined that no error occurred. See *People v. White*, 2011 IL 109689, ¶ 133 (holding that plain error review under the closely balanced evidence prong is similar to the analysis of a claim of ineffective assistance of counsel based on evidentiary error "insofar as a defendant in either case must show he was prejudiced"). Where no error occurred, the defendant cannot show prejudice.

¶ 34             2. Improper Remarks During Closing Argument

¶ 35     The defendant contends that, during closing argument, the State improperly shifted the burden of producing evidence to the defendant when the prosecutor argued that any alternative theory presented by the defendant was not supported by the evidence and that it was defense counsel's job to raise doubt, but she had not done so. The defendant also argues that the prosecutor misstated the evidence when he stated, "[Barns] testified that she called [the defendant] after she picked it up and asked why he only had the amount that he did." In the proceedings below, the defendant did not object to any of the challenged statements made by the prosecutor but included an allegation that the State improperly

16

shifted the burden of proof in his posttrial motion. He did not include the allegation that the prosecutor misstated the evidence in his posttrial motion.

¶ 36    The standard of review employed for reviewing a prosecutor's comments during closing argument is similar to the plain error standard. *People v. Nieves*, 193 Ill. 2d 513, 533 (2000). Reversal is only warranted if the prosecutor's remarks resulted in substantial prejudice to the defendant and constituted a material factor in the jury's verdict. *People v. Gutierrez*, 402 Ill. App. 3d 866, 895 (2010).

¶ 37    A defendant seeking the reversal of his or her conviction based upon improper remarks made during closing argument faces a difficult burden. *People v. Holmon*, 2019 IL App (5th) 160207, ¶ 48. Generally, prosecutors enjoy considerable latitude in closing argument. *Holmon*, 2019 IL App (5th) 160207, ¶ 49. In reviewing a defendant's challenge to comments made by a prosecutor during closing argument, we must consider the challenged remarks in the context of closing arguments as a whole. *Holmon*, 2019 IL App (5th) 160207, ¶ 51.

¶ 38    We begin with the defendant's contention that the prosecutor improperly shifted the burden of proof. In criminal cases, the burden of proof lies with the State, and defendants have no obligation to present evidence. *People v. Abadia*, 328 Ill. App. 3d 669, 679 (2001). A defendant may, however, propose alternative theories to explain the evidence presented by the State. *Abadia*, 328 Ill. App. 3d at 679. Consequently, prosecutors may comment on the credibility or persuasiveness of the defendant's theory of the case. *Holmon*, 2019 IL App (5th) 160207, ¶ 50. Prosecutors may also comment on defense counsel's failure to produce evidence promised in opening statement provided that the comments do not reflect

17

upon the defendant's failure to testify. *Abadia*, 328 Ill. App. 3d at 678-79. Here, defense counsel asserted in the defendant's opening statement that the defense would show, through cross-examination, that Barns did not purchase heroin from the defendant. During the State's case in chief, defense counsel aimed to support the defendant's theory when cross-examining the State's witnesses. For instance, Detective Koontz admitted that he did not search Barns's bra or panties and was not positive if the detectives searched her socks and boots. While Detective Koontz testified that he searched the car, he could not recall whether he searched a hole in the door panel or the visors in the car. Furthermore, Detective Koontz did not keep Barns in his sight at all times during the controlled buy. When questioning Barns, defense counsel elicited that Barns had been arrested for possession of methamphetamine shortly before the controlled buy; that Barns did not wish to return to prison and participated in the controlled buy out of desperation; that Barns could not remember details because she was high from using heroin and methamphetamine prior to participating in the controlled buy; and that Barns knew the interior of her friend's car because she had been in the car multiple times prior to the controlled buy. The defendant elected to not present evidence or testify in his defense.

¶ 39    In the opening portion of the State's closing argument, the prosecutor summarized the State's evidence and commented that the defendant may posit an alternative theory which would be conjecture rather than supported by any evidence. In the defendant's closing argument, defense counsel reminded the jury that the defendant had no burden of proof in the case and argued that the evidence supported the defendant's theory that Barns obtained the heroin from another source prior to the controlled buy in order to set up the

18

defendant. In rebuttal, the prosecutor argued that there was no other purpose for Barns to meet with the defendant other than to purchase heroin. The prosecutor remarked, "It's [defense counsel]'s job to raise doubt, and she's very good at what she does. [Defense counsel] has not raised a reasonable doubt here." As to these statements, the defendant claims error.

¶ 40    In the context of the closing argument as a whole and after a review of the record, we find that the prosecutor's remarks were a permissible challenge to the persuasiveness of the defendant's theory, not an improper shift of the burden of proof. The prosecutor did not suggest that the defendant had a duty to present evidence (see *People v. Glasper*, 234 Ill. 2d 173, 212 (2009)) or argue that defense counsel should have asked certain questions of the State's witnesses (see *People v. Edgecombe*, 317 Ill. App. 3d 615, 622 (2000)). Instead, the prosecutor's challenged remarks appear to be directed at the persuasiveness of the defendant's theory and defense counsel's argument that reasonable doubt existed in this case.

¶ 41    The defendant also alleges that the prosecutor misstated the evidence in rebuttal closing argument when the prosecutor stated, "[Barns] testified that she called [the defendant] after she picked it up and asked why he only had the amount that he did." A prosecutor may argue facts in evidence and may draw any reasonable inferences from that evidence; however, a prosecutor may not misstate the evidence and may not argue assumptions that are not based on the evidence. *People v. Jackson*, 2018 IL App (5th) 150274, ¶ 71. We agree with the defendant that the prosecutor misstated the evidence because Barns did not testify that she called the defendant after he got out of the car. Rather,

19

Barns testified that she did not remember the phone call after she dropped off the defendant. We do not believe, however, that this isolated remark was prejudicial enough to warrant reversal. Barns testified that she called the defendant prior to meeting with him in order to determine his location so that she could purchase heroin. Barns also testified that she did not make any additional stops or talk to anyone other than the defendant from the time she left the detectives until she returned. Although Barns did not remember the phone call after dropping off the defendant, the video evidence clearly showed Barns talking to the defendant about the amount of heroin Barns had purchased from him. Based on the evidence presented, we cannot say that, in the absence of the prosecutor's misstatement, the defendant was prejudiced or that the jury would have reached a different result.

¶ 42 The defendant also argues that he was denied effective assistance of counsel because defense counsel failed to properly preserve this issue for review. To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant cannot satisfy both prongs of this test, the claim must fail. *Strickland*, 466 U.S. at 697. The showing of *Strickland* prejudice is similar to the prejudice required for a prosecutor's improper remarks because the defendant must show "that real justice was denied or that the verdict resulted from counsel's failure to object." *People v. Perry*, 224 Ill. 2d 312, 347 (2007). Because we have already determined that defendant is not entitled to a new trial

20

based on the challenged remarks, the defendant cannot show that counsel's failure to object caused the type of prejudice *Strickland* requires. *Perry*, 224 Ill. 2d at 350.

¶ 43          3. The Jury's Viewing of the Video During Deliberations

¶ 44    The defendant argues that the trial court erred when, during jury deliberations, the trial court required the jury to view the video evidence in the courtroom while in the presence of the trial court and the parties. The defendant argues that this allegedly improper procedure chilled jury deliberations and prevented jurors from speaking freely regarding the evidence. At trial, the defendant agreed to the procedure utilized by the trial court and did not include this issue in his posttrial motion.

¶ 45    In his initial brief, the defendant predominantly relied on the Third District's decision in *People v. Hollahan*, 2019 IL App (3d) 150556, ¶ 20, in which the appellate court held that a procedure similar to that utilized in the defendant's case amounted to plain error. After the defendant filed his initial brief, however, our supreme court reversed the Third District's decision. See *People v. Hollahan*, 2020 IL 125091. In his reply brief, the defendant acknowledges that our supreme court's decision in *Hollahan* controls the issue raised in this case.

¶ 46    Whether evidentiary items should be taken to the jury room is within the trial court's discretion. *Hollahan*, 2020 IL 125901, ¶ 11. We will not disturb the trial court's decision unless there was an abuse of discretion that prejudiced the defendant. *Hollahan*, 2020 IL 125901, ¶ 11. Moreover, the decision to grant or deny the jury's request to review evidence rests within the discretion of the trial court. *Hollahan*, 2020 IL 125901, ¶ 11.

21

¶ 47 In *Hollahan*, after the jury retired to deliberate, they requested to view a video in evidence. 2020 IL 125091, ¶ 4. The trial court granted the jury's request, and the jury viewed the video in the courtroom because the trial court did not have the necessary arrangements to allow the jury to view the video in the jury deliberation room. *Hollahan*, 2020 IL 125091, ¶ 4. The trial court also allowed the parties and two alternate jurors to remain in the courtroom while the jury viewed the video. *Hollahan*, 2020 IL 125091, ¶ 4. Defense counsel did not object to this procedure. *Hollahan*, 2020 IL 125091, ¶ 4. Before the jury was brought into the courtroom, the trial court admonished the parties and the alternate jurors that the jury would be watching the videos and that " '[n]o one will have any conversation.' " *Hollahan*, 2020 IL 125091, ¶ 4. When the jury was brought into the courtroom, the trial court advised the jury that the court was unable to have the video shown in the jury deliberation room and that the trial court had " 'instructed everyone to not say a word.' " *Hollahan*, 2020 IL 125091, ¶ 4. After watching the video, the jury returned to the jury room to resume deliberations and subsequently found the defendant guilty. *Hollahan*, 2020 IL 125091, ¶ 4. Our supreme court concluded that no error occurred because no deliberations took place while the jurors were watching the video in the presence of non-jurors, and there was no communication with non-jurors. *Hollahan*, 2020 IL 125091, ¶ 27.

¶ 48 Here, the jury requested to view the second video of the alleged drug transaction while they were deliberating. Prior to trial, the defendant requested that a portion of the video be excluded because the defendant made a prejudicial comment. The trial court granted this request and explained that, if the jury requested to see the video during deliberations, the video would be shown in the presence of the parties. The defendant did

not object. After the jury retired to deliberate, the trial court again explained that, if the jury requested to see the video, they would view the video "in the courtroom under controlled circumstances so that that audio can be muted again." The defendant again did not object, and in fact, agreed to this procedure. When the jury requested to view the video during deliberations, the jury was brought back into the courtroom to view the video in the presence of the parties. After watching the video, the jury returned to the jury deliberation room and resumed deliberations. Thereafter, the jury found the defendant guilty.

¶ 49    The record does not show that the jurors deliberated while watching the video in the courtroom or that the parties communicated, either verbally or nonverbally, with the jurors. Furthermore, the record does not show that the presence of the trial court or the parties had a chilling effect on the jury's deliberations. We therefore find no error in the agreed upon procedure utilized by the trial court.

¶ 50                    B. The Defendant's Request for a *Krankel* Inquiry

¶ 51    Finally, the defendant argues that the trial court failed to address the defendant's allegations of ineffective assistance of counsel and requests that we remand this case for a *Krankel* inquiry. Pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), a defendant's *pro se* claim of ineffective assistance of counsel requires the trial court to inquire into the factual basis of the defendant's claims. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If the trial court determines that the defendant's claims lack any merit or pertains to matters of trial strategy, the trial court need not appoint new counsel and may deny the defendant's *pro se* claims. *Moore*, 207 Ill. 2d at 78. If the allegations show possible neglect, however, new counsel should be appointed. *Moore*, 207 Ill. 2d at 78.

23

¶ 52 "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78. In conducting this inquiry, some interchange between the trial court and counsel regarding the facts and circumstances surrounding the defendant's claims is permissible and usually necessary in assessing whether further action is warranted. *Moore*, 207 Ill. 2d at 78. The trial court may also discuss the allegations with the defendant. *People v. Ayres*, 2017 IL 120071, ¶ 12. "A brief discussion between the trial court and the defendant may be sufficient." *Moore*, 207 Ill. 2d at 78. The trial court may also base its evaluation of the defendant's *pro se* claims of ineffective assistance on the court's knowledge of defense counsel's performance at trial and the insufficiency of the defendant's claims on their face. *Moore*, 207 Ill. 2d at 78.

¶ 53 Here, the defendant wrote the trial court a letter making various allegations against defense counsel. At the hearing on the defendant's "Motion for New Trial or Alternatively, for Judgment Notwithstanding the Verdict," defense counsel informed the trial court of the defendant's letter and suggested the court question the defendant about the matter. The trial court indicated that it had not read the defendant's letter and asked the defendant if he wished to make a statement. The defendant responded, "[A]ll I want to say is I put it in your hands. You are the judge. Whatever you think is best." The trial court informed the defendant, "[I]f you have any complaints to make about [defense counsel], then now is the time to do it. If you don't have, [*sic*] that's fine too." The defendant indicated that he had "some very important things" to say and requested that the trial court read the defendant's letter. After reading the letter, the trial court asked the defendant if he wished to add to his

allegations. The defendant replied, "No, sir." The trial court asked the defendant if he wished to proceed with defense counsel, to which the defendant said, "Yes, sir." At the conclusion of the hearing, the trial court again offered the defendant an opportunity to make a statement about his allegations against defense counsel. The defendant declined to do so and indicated that he was "fine" with defense counsel.

¶ 54    Contrary to the defendant's assertion that the trial court failed to conduct a proper inquiry, the record demonstrates that the trial court gave the defendant several opportunities to make a complaint against defense counsel or add to the allegations in the defendant's letter. The defendant declined to do so, requesting only that the trial court read his letter. Thus, we find that the trial court's inquiry was adequate and remand for a *Krankel* inquiry is not required.

¶ 55    For the foregoing reasons, we affirm the defendant's convictions.

¶ 56    Affirmed.