NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220448-U

NO. 4-22-0448

IN THE APPELLATE COURT

FILED
April 12, 2023
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| MARCO HARDEN, | ) | No. 20CF510 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding that:

(1) defendant failed to establish his trial counsel performed deficiently in failing to object to evidence of defendant's prior bad acts;

(2) defendant waived his argument that the trial court erred by allowing the jury to view the entire contents of a notebook that had been admitted into evidence;

(3) defendant was not prejudiced by his trial counsel's failure to object to the entire notebook being given to the jury for its deliberations;

(4) the record is insufficient to review defendant's claim that his trial counsel was ineffective for failing to properly investigate the notebook;

(5) defendant failed to establish his trial counsel was ineffective for failing to object to the identification of the author of a note admitted at trial; and

(6) defendant failed to establish a new trial was warranted on the basis of cumulative error.

¶ 2　　　　　Defendant, Marco Harden, appeals his conviction for criminal sexual assault. Defendant argues his trial counsel was ineffective for failing to object to the State's use of evidence of his prior bad acts. Defendant also argues the trial court erred by allowing the jury to view the entire contents of a notebook during deliberations because only one note in the notebook was admitted at trial. Defendant further contends his trial counsel was ineffective for failing to (1) object to the publishing of the entire notebook to the jury, (2) properly investigate the notebook, and (3) challenge the identification of the note's author based on a witness's ambiguous testimony. Finally, defendant argues the cumulative effect of all these errors deprived him of a fair trial. We affirm.

¶ 3　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　　　Defendant was charged with criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2020)) in that, on or about August 24, 2020, he knowingly committed an act of sexual penetration upon N.H. by the use of force or threat of force. Prior to trial, the State filed a notice of intent to present evidence of prior incidents of criminal sexual abuse committed upon N.H. by defendant pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2020)).

¶ 5　　　　　A jury trial commenced on November 1, 2021. The State advised the trial court that it would be questioning N.H. about other incidents involving defendant before the date of the charged offense. The State indicated it had given notice of its intent to use this evidence. Defense counsel confirmed he had received notice of the State's intent to use such evidence and stated: "I think we address that matter as it comes up during trial."

¶ 6　　　　　Officer Colin Truitt testified that on August 27, 2020, he was dispatched to a residence to gather information concerning a sexual assault that had been reported. When he

arrived, Gabriel Sims stated her daughter, N.H., had been sexually assaulted. Sims showed Truitt a notebook containing a handwritten note, but he did not collect it that day. The State showed Truitt People's exhibit No. 1, which he identified as the "notepad" Sims had shown him. After Truitt gathered information, the matter was referred to the detective bureau for further investigation.

¶ 7　　　　N.H. testified that she was 14 years old at the time of the trial. Defendant was Sims's ex-boyfriend. N.H. stated that, around August 25, 2020, she was in the living room of her house with her siblings and defendant. Sims was at work. Defendant told the children to go upstairs. He then told N.H. to come back downstairs. She sat next to defendant on the couch. Defendant began squeezing and sucking on her breasts. He pulled her pants down and inserted his finger, tongue, and penis into her vagina. The incident happened before N.H.'s cousin's birthday on August 25, 2020, but N.H. did not know exactly when. She stated it might have been one or two weeks before August 25, 2020. She did not tell Sims about the incident on the day it happened.

¶ 8　　　　N.H. stated the incident that occurred around August 25, 2020, was not the first incident involving defendant. She indicated "stuff started beginning" with defendant after Christmas in December 2019. On one occasion, defendant touched her "private part" with his hand while she was on the stairs. On another occasion, he touched her "butt" while she was in the kitchen.

¶ 9　　　　N.H. testified that, sometime after July 29, 2020, but before the incident that occurred around August 25, 2020, defendant placed his tongue on N.H.'s vagina. It was the first time he had done so. That incident occurred on the couch in the living room of N.H.'s house while her siblings were upstairs. N.H. acknowledged she previously told an officer defendant had

kissed her neck and put his hand down her shirt during the incident that occurred around July 29, 2020, but she did not tell the officer defendant had placed his tongue on her vagina. N.H. explained that she was not comfortable talking to the officer about the incident and she was scared.

¶ 10       N.H. indicated that, on another occasion, defendant called her upstairs and asked her to put on a pair of shorts in exchange for $10. She refused to do so. The next day, a police officer came to N.H.'s house to talk to her about defendant. N.H. did not tell the officer defendant had placed his finger, tongue, or penis in her vagina because she was uncomfortable discussing it. N.H. testified she never saw a notebook with a note written on it.

¶ 11       On cross-examination, defense counsel asked N.H. if the incident around August 25, 2020, was the first time defendant had placed his penis in her vagina, and she stated it was not. Defense counsel asked N.H. how many times defendant had placed his penis in her vagina. N.H. stated she did not know many times it happened, but she estimated it happened on three or four occasions. She indicated the first such incident happened on the couch between July 17, 2020, and July 29, 2020. N.H. stated defendant placed his penis in her vagina "like, two times" during that time period. The last time it happened was a few days before August 25, 2020. N.H. stated she did not tell anyone before the trial that it happened "so many" times because she was scared and embarrassed.

¶ 12       Defense counsel then questioned N.H. concerning whom she had spoken with during the course of the investigation and whether she had told those individuals that defendant placed his penis in her vagina. She indicated she had spoken with a police officer at her house on or about August 27, 2020, people at the Department of Children and Family Services, and a doctor or nurse. She also spoke to people at a "department," but she could not remember what it

was called. She did not recall telling the police officer who came to her house that defendant had placed his penis in her vagina. She stated she told Sims and "the people that were recording [her] and stuff like that" that defendant placed his penis in her vagina three or four times.

¶ 13 Sims testified that N.H. was her daughter and defendant was her ex-boyfriend. In 2020, Sims lived with defendant, N.H., and her three other children. On August 27, 2020, Sims received a call from one of her children's teachers and grabbed a notebook to write a note. Sims observed a note in the notebook written by defendant that stated: " 'You want to wear those shorts, I'll give you an extra 10.' " Sims stated she had seen defendant's handwriting approximately 100 times and that she "kn[ew] his handwriting." The prosecutor asked Sims what she was thinking or feeling when she saw the note. Sims replied, "I just felt like couldn't nobody else write it. Nobody is in my house ever, but my kids and him." The prosecutor then asked Sims if she recognized the handwriting on the note. Sims replied, "Yes, I recognized the handwriting."

¶ 14 Sims testified that defendant came home shortly after she found the note. She asked him about it, and he "started *** running and grabbing stuff." Sims stated defendant was acting like he "knew he was done" or "knew he was caught or something." She then told him to leave.

¶ 15 Sims did not initially know whom the note was about. She asked her children if they had seen the note and if defendant had asked them to wear shorts. N.H. looked like she wanted to say something, but she did not. According to Sims, N.H. seemed scared. Sims's sisters came over, and one of them started talking to N.H. Then, N.H. began crying and "it all basically came out." Sims called the police. An officer came to her house, and she showed him the notebook. Later, Sims gave the notebook to a detective at the child advocacy center.

¶ 16        The prosecutor showed Sims People's exhibit No. 1, and she identified it as the notebook she had discussed during her testimony. It was in an envelope that was opened at the top. Sims stated that the prosecutor opened the envelope in her presence the night before her testimony, and it had been sealed before that. Sims identified the note she had stated was written by defendant. She indicated she recognized the other notes in the notebook, and they were written by her. The prosecutor asked the trial court to admit People's exhibit No. 1 into evidence. Defense counsel objected and stated: "The notebook is being entered for the handwriting, and there's not proper foundation as to whose handwriting it is." The prosecutor replied: "No. I'm actually—I'm entering it for its content which was already just testified to, and I suppose it's handwriting, but part and parcel, it's the same thing, I guess." The court admitted the exhibit over defense counsel's objection.

¶ 17        The note Sims indicated was written by defendant was published to the jury during the trial. The note stated: "U wanna make 10 xtra wearin those shorts while doin yo work. I get paid tomorrow." The other pages in the notebook were not published to the jury during the trial. The pages preceding the note purportedly written by defendant contained lists, numbers, contact information, and information about meetings. The page after the note purportedly written by defendant appears to be blank with a small amount of very light pencil shading. If held up to a light source at an angle, the impression of indented writing is visible on the page. In his brief, defendant asserts the indented writing states: "U wanna make 10 xtra wearin those [illegible] while you do your homework. That's all you have to do is jus wear em. If you wanna do anything [illegible] jus do it or don't have 10." The State appears to agree with defendant's assertion concerning the content of the indented writing. However, in our review of this page of

- 6 -

the notebook, we are only able to decipher some of the words defendant claims are present and find the remaining words are illegible.

¶ 18    Defendant testified in his case-in-chief that, in 2020, he lived with Sims and her children. On August 27, 2020, Sims told him that someone had written on her notebook and questioned him about it. Defendant stated: "She came to me and said that her notepad was written on and that she could see words on it from the page above or whatever. It was written hard or whatever so she could see words on the other page." She did not show him the notebook. Defendant stated Sims was "a bit hysterical," and she asked him if anything was "going on" with him and her daughter. Defendant got a "bad vibe," so he left and went to his brother's house. Defense counsel showed defendant People's exhibit No. 1. Defendant identified it as Sims's notebook, and he indicated he had only ever seen her use it. Defense counsel showed defendant the note Sims claimed he had written. Defendant stated he had never seen the note before, and it was not in his handwriting. He stated he never had sexual intercourse with N.H., touched her inappropriately, touched her "private parts," or undressed her.

¶ 19    During closing argument, defense counsel argued N.H. was not a credible witness. Defense counsel stated N.H. had given inconsistent accounts of the improper conduct, when it happened, and how many times it happened. Counsel argued that N.H. could not "keep her stories straight" and was "telling you what she thinks you want to hear."

¶ 20    After closing arguments, the trial court asked the parties if they agreed that the exhibits that had been admitted during the trial, including the notebook, could be sent to the jury room. Both the prosecutor and defense counsel agreed.

¶ 21    The jury found defendant guilty, and the trial court subsequently sentenced him to five years' imprisonment. This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23        On appeal, defendant argues that (1) his trial counsel was ineffective for failing to object to the State's use of evidence of his prior bad acts; (2) the trial court erred by allowing the jury to view the entire contents of the notebook during deliberations; (3) trial counsel was ineffective for failing to object to giving the entire notebook to the jury for its deliberations, properly investigate the notebook, or challenge the identification of the note's author based on Sims's ambiguous testimony; and (4) the cumulative effect of these errors deprived him of a fair trial.

¶ 24              A. Ineffective Assistance of Counsel—Prior Bad Acts

¶ 25        First, defendant argues his trial counsel was ineffective for failing to object to the State's use of prejudicial evidence of his prior bad acts. Defendant notes N.H. testified concerning one prior incident where defendant placed his tongue on her vagina and three or four incidents where defendant placed his penis in her vagina. Defendant contends N.H.'s testimony concerning the prior incidents was vague, N.H. was unable to provide details about the prior incidents, and she did not tell anyone the number of prior incidents that had occurred until the trial. Defendant argues this evidence was inadmissible as propensity evidence because its probative value was substantially outweighed by the potential for unfair prejudice.

¶ 26        Section 115-7.3(a)(1), (b) of the Code (725 ILCS 5/115-7.3(a)(1), (b) (West 2020)) provides that, in cases where a defendant is accused of one of the sex offenses enumerated in that section, including criminal sexual assault, the State may introduce evidence that the defendant has committed other enumerated sex offenses. Such evidence may be considered for any relevant purpose, including to show the defendant's propensity to commit sex crimes. *Id.*; *People v. Ward*, 2011 IL 108690, ¶ 25. However, before admitting such evidence

- 8 -

under section 115-7.3, the trial court must conduct a balancing test, weighing the probative value of the evidence against the undue prejudice to the defendant it may produce. 725 ILCS 5/115-7.3(c) (West 2020); *Ward*, 2011 IL 108690, ¶ 26.

¶ 27        A criminal defendant has a right to the effective assistance of counsel under the United States and Illinois constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. That is, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 28        "A court must determine whether, considering all the circumstances, counsel's identified acts or omissions were outside the wide range of professionally competent assistance." *People v. Brown*, 2023 IL 126852, ¶ 26. "To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "[T]rial strategy ordinarily encompasses decisions such as what matters to object to and when to object." *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997). Even "a mistake in trial strategy or an error in judgment by defense counsel will not alone render representation constitutionally defective." *People v. Peterson*, 2017 IL 120331, ¶ 80. Rather, "[o]nly if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." *People v. Perry*, 224 Ill. 2d 312, 355-56 (2007).

¶ 29    Here, defendant has not established that his counsel performed deficiently by failing to object to the State's prior bad acts evidence on the basis that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Significantly, the only testimony challenged on appeal concerning defendant's prior bad acts that was actually elicited by the State was N.H.'s testimony about an incident where defendant placed his tongue on her vagina on an occasion after July 29, 2020 (the July 29 incident). N.H.'s testimony concerning this incident was fairly specific, as she gave a time frame for when it occurred and indicated it occurred in the living room of her house.

¶ 30    Defendant has not overcome the presumption that trial counsel's failure to object to N.H.'s testimony concerning the July 29 incident was the product of sound trial strategy. The State's case turned on N.H.'s credibility, and defense counsel's closing argument showed that his strategy was to attack her credibility by highlighting the inconsistencies in her testimony. Notably, during her testimony concerning the July 29 incident, N.H. acknowledged she previously told a police officer defendant had only kissed her neck and placed his hand down her shirt during the incident. Defense counsel may have made a strategic decision not to object to N.H.'s testimony concerning the July 29 incident so that he could use the inconsistencies between her trial testimony and her prior account of the incident to attack her credibility. Counsel's strategy in this regard was not "so unsound that he entirely fail[ed] to conduct meaningful adversarial testing of the State's case." *Id.* at 355.

¶ 31    Defendant also contends that defense counsel was ineffective for failing to object to N.H.'s testimony that defendant put his penis in her vagina on three or four occasions, noting that her testimony was vague and she had not indicated that many incidents occurred until the trial. However, N.H.'s testimony concerning the three or four incidents of sexual penetration was

elicited only during defense counsel's cross-examination of N.H., when he asked her how many times defendant had placed his penis in her vagina. As the challenged testimony was elicited in direct response to a question posed by defense counsel, we cannot find that defense counsel was ineffective *due to his failure to object to it*. Whether defense counsel was ineffective for *eliciting* the testimony concerning the three or four instances of sexual penetration is a separate question. However, that question is not before us in this appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in the appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 32                          B. Allowing the Jury to View the Entire Notebook

¶ 33          Defendant argues the trial court erred by allowing the jury to view the entire contents of the notebook during its deliberations because most of the notebook was not admitted into evidence or published in court. Specifically, defendant contends only the note allegedly written by him was admitted because it was the only page of the notebook that was published to the jury during trial, and the State indicated it was entering the exhibit for "its content which was already just testified to." Defendant argues this "content" consisted only of the one note. Defendant contends that, by allowing the jury to view the entire notebook, the court denied him the right to be tried only on evidence admitted and confronted in open court. Defendant contends the other material in the notebook—including the indented writing and other notes—was prejudicial.

¶ 34                          1. *Admission of the Notebook*

¶ 35          Initially, we address the State's contention that, contrary to defendant's argument on appeal, the record shows the entire notebook was admitted into evidence. While "[i]t is error for a judge to allow the jury during deliberations to view matters of any sort that were not

- 11 -

admitted into evidence" (*People v. Long*, 316 Ill. App. 3d 919, 928 (2000)), the question of whether admitted evidence should be given to the jury during deliberations is a matter within the discretion of the trial court. *People v. Hollahan*, 2020 IL 125091, ¶ 11.

¶ 36        We find the record shows that the entire notebook was admitted into evidence. People's exhibit No. 1 was consistently identified and referred to as a "notebook" or "notepad" by the witnesses. Defense counsel also referred to the exhibit as a "notebook" rather than a single note from the notebook. While Sims offered detailed testimony concerning the note she claimed was written by defendant, she also testified that she recognized the other notes in the notebook and that they were written by her. Thus, we conclude People's exhibit No. 1 consisted of the entire notebook.

¶ 37                                    2. *Waiver*

¶ 38        We next address the State's assertion that defendant failed to preserve this argument and forfeited plain error review by affirmatively acquiescing to the jury viewing the entire notebook during deliberations. The State notes that when the trial court asked the parties if the trial exhibits could be sent to the jury room, defense counsel agreed they could. Defendant argues that defense counsel did not affirmatively acquiesce to the notebook being sent to the jury because he objected to the admission of the notebook, and it was unnecessary to object again when the court asked if it should be sent to the jury during deliberations. Defendant also argues that, because only the note purportedly written by him was admitted into evidence, defense counsel likely assumed the trial court's question regarding whether to send the exhibits to the jury room was only in reference to that one note rather than the entire notebook.

¶ 39        "When defense counsel affirmatively acquiesces to actions taken by the trial court, any potential claim of error on appeal is waived ***." *People v. McGuire*, 2017 IL App

(4th) 150695, ¶ 29. "Waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011). "Whereas forfeiture occurs accidentally or negligently, waiver is an intentional decision to abandon a known legal argument." *People v. Scott*, 2015 IL App (4th) 130222, ¶ 24. When a claim of error is waived rather than forfeited, the plain error doctrine does not apply, and the defendant's only available appeal avenue is to claim he received ineffective assistance of counsel. *McGuire*, 2017 IL App (4th) 150695, ¶ 29; *People v. Baker*, 2022 IL App (4th) 210713, ¶ 61. This court has found a waiver of error occurred when a defendant *expressly* declined to make an objection. *Scott*, 2015 IL App (4th) 130222, ¶ 24 (citing *People v. Dunlap*, 2013 IL App (4th) 110892, ¶¶ 10-11).

¶ 40        We find defendant waived his challenge to the trial court permitting the jury to view the entire notebook during deliberations. The court specifically asked defense counsel if he agreed the exhibits that had been admitted at trial, including the notebook, could be sent to the jury room during deliberations. Defense counsel replied, "Yes, your Honor." Thus, defense counsel affirmatively acquiesced to the court's proposed action of sending the notebook to the jury room. Counsel's earlier objection to the admission of the notebook into evidence did not preserve the separate issue of whether this evidence was erroneously sent to the jury room during deliberations. As we have discussed, the record shows the entire notebook was admitted as People's exhibit No. 1, and, accordingly, we reject defendant's argument that defense counsel only agreed to the note purportedly written by defendant being sent to the jury room.

¶ 41        As we have found defendant waived this issue by agreeing that the notebook could be sent to the jury room during deliberations, his only available recourse is to claim that he received ineffective assistance of counsel. See *McGuire*, 2017 IL App (4th) 150695, ¶ 29.

¶ 42                    C. Ineffective Assistance of Counsel—Notebook

¶ 43          Defendant raises several claims of ineffective assistance of counsel regarding the notebook. First, defendant argues his trial counsel provided ineffective assistance by failing to object to the publishing of the entire notebook to the jury despite the "additional prejudicial material that it contained." Next, defendant argues his counsel failed to properly investigate the notebook before it was published. Finally, defendant argues counsel should have challenged Sims's identification of defendant as the author of the note based on her "ambiguous testimony."

¶ 44          To prevail on his claims of ineffective assistance of counsel, defendant "must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced [him]." *Domagala*, 2013 IL 113688, ¶ 36. A court may decide a claim of ineffective assistance of counsel by proceeding to the prejudice prong without addressing counsel's performance. *People v. Hale*, 2013 IL 113140, ¶ 17. "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* ¶ 18 (quoting *Strickland*, 466 U.S. at 694).

¶ 45                    1. *Failure to Object to Publishing the Entire Notebook*

¶ 46          First, defendant argues his trial counsel was ineffective for failing to object to the trial court allowing the jury to view the entire notebook due to the notebook's prejudicial effect. Defendant contends the content of the indented writing was prejudicial and notes there was no testimony concerning the indented writing to provide context for it. Defendant also argues publishing the entire notebook to the jury was prejudicial because it allowed the jury to make an

- 14 -

"unauthorized handwriting comparison" between the note purportedly written by him and the other notes in the notebook.

¶ 47          We find defendant has not shown he was prejudiced by his trial counsel's failure to object to the entire notebook being given to the jury during deliberations. Defendant has not identified the basis on which defense counsel could have objected to the jury viewing the notes in the notebook that preceded the note purportedly written by defendant. Sims testified these notes were written by her, and, contrary to defendant's argument on appeal, the entire notebook was admitted into evidence. See *supra* ¶ 36. Defendant cites no authority in support of the proposition that, under these circumstances, it would have been improper for the jury to view these notes or that doing so would permit them to conduct an "unauthorized handwriting comparison." See *People v. Reed*, 324 Ill. App. 3d 671, 680 (2001) (holding that once evidence has been admitted, publishing its contents to the jury is a matter within the discretion of the trial court). Accordingly, defendant has not shown a reasonable probability exists that an objection to the jury viewing these notes would have been successful.

¶ 48          We also find defendant has not shown he was prejudiced by the jury's possession of the page of indented writing in the notebook. The indented writing is extremely difficult to perceive, let alone decipher. Unless it is held up to a light source at an angle, it appears to merely be a blank page in the notebook. While defendant testified that Sims told him about indented writing in the notebook, he stated he had never seen it. Moreover, there was no indication by either party that such a page was present in the notebook admitted at trial. Under these circumstances, it seems unlikely that the jury saw or was able to decipher any indented writing.

¶ 49          However, even if the jurors saw the indented writing and were able to decipher all the words defendant claims are visible, the content was very similar to the note Sims testified

defendant had written. Both notes offered $10 to the recipient in exchange for wearing shorts while doing "work" or "homework." As such, a reasonable probability does not exist that the result of the trial would have been different if the page containing the indented writing had not been sent to the jury room.

¶ 50                  2. *Failure to Properly Investigate the Notebook*

¶ 51         Defendant also argues his trial counsel provided ineffective assistance by failing to properly investigate the contents of the notebook. Defendant notes Sims testified she gave the notebook to a police officer during the investigation, and it was in a sealed envelope the night before her trial testimony. Defendant contends the record shows counsel did not view the notebook in its entirety before trial because defense counsel was not present when the envelope was opened that night. We find, however, the record is silent as to whether counsel viewed the entire notebook prior to trial. Sims's testimony that the notebook was in a sealed envelope the night before she testified does not negate the possibility that defense counsel viewed the notebook on some prior occasion. Accordingly, we conclude the record is inadequate for resolving defendant's claim and decline to address it in this appeal. See *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 52                  3. *Failure to Challenge the Identification of the Note's Author*

¶ 53         Defendant also argues his trial counsel was ineffective for failing to "challenge[ ] the identification of the note's author based on Sims's ambiguous testimony," asserting that Sims's testimony did not demonstrate she was able to recognize defendant's handwriting. Defendant contends that, although Sims indicated she had seen defendant's handwriting approximately 100 times, she did not testify that his handwriting was a definitive match to the

writing in the notebook. Rather, she indicated she "just felt like couldn't nobody else write it" because there was no one else in the house.

¶ 54        "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Sept. 17, 2019). An example of authentication or identification conforming with the requirements of Illinois Rule of Evidence 901 is a "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation." Ill. R. Evid. 901(b)(2) (eff. Sept. 17, 2019).

¶ 55        Here, trial counsel did not perform deficiently because counsel did, in fact, object to the introduction of the notebook into evidence on the basis that the State failed to lay a proper foundation for whose handwriting was in the notebook. Moreover, even if we were to accept defendant's argument that this objection was not sufficiently specific, defendant did not suffer prejudice because there is no reasonable probability that such an objection would have been successful. While Sims indicated she "felt" only defendant could have written the note because no one but defendant and her children was ever in the house, this was in response to the prosecutor asking what she was "thinking or feeling" when she saw the note. Sims also testified she "kn[ew]" defendant's handwriting, had seen it approximately 100 times, and recognized the handwriting on the note. This testimony established that Sims was familiar with defendant's handwriting and recognized the note in the notebook to be in his handwriting. Thus, Sims's testimony was sufficient to identify or authenticate the handwriting on the note pursuant to Illinois Rule of Evidence 901 (eff. Sept 17, 2019).

¶ 56                    D. Cumulative Error

- 17 -

¶ 57    Finally, defendant argues, in the event we find that any one error he has identified does not require reversal, the cumulative effect of the errors he has identified warrants a new trial to protect the fairness and reputation of the judicial process. "[W]hile individual trial errors may not require a reversal, those same errors considered together may have the cumulative effect of denying defendant a fair trial." *People v. Speight*, 153 Ill. 2d 365, 376 (1992).

¶ 58    With respect to defendant's claims of ineffective assistance of counsel, we have found defendant did not establish his trial counsel performed deficiently in failing to object to evidence of prior bad acts, investigate the entire notebook before trial, or challenge Sims's identification of the author of the note purportedly written by defendant. Accordingly, defendant has not established error as to these claims. As to defendant's claim the trial court erred in allowing the entire notebook to be published to the jury, we have found defendant waived the issue due to his counsel's acquiescence to the jury viewing the notebook. We further found he failed to establish a claim of ineffective assistance of counsel with regard to this claim because he failed to show he was prejudiced by counsel's failure to object to publishing the entire notebook. Accordingly, we find that none of defendant's claimed errors, individually or cumulatively, warrant reversal or a new trial. See *Perry*, 224 Ill. 2d at 356 (holding that cumulative error analysis was unnecessary where the court had rejected all the defendant's claims of ineffective assistance of counsel, concluding counsel's performance was not deficient or, even if deficient, did not result in prejudice).

¶ 59                                III. CONCLUSION

¶ 60    For the reasons stated, we affirm the trial court's judgment.

¶ 61    Affirmed.